STATE ·OF MISSOURI, *ex rel.*, H. BEASLEY *et al.*, Appellants, v. JOHN D. YOUNG, Mayor of the City of Houston, Respondent.

### St. Louis Court of Appeals, March 26, 1895.

1. **Cities and Towns**: INCORPORATION: DESCRIPTION OF LIMITS. When a city or town which has not been previously incorporated seeks incorporation, the petition therefor to the county court must set forth its metes and bounds. The description of its territory as the west half of a stated quarter section is sufficient, however, especially when it does not appear that there is any dispute as to the boundaries of that subdivision.

2. ———: ———: EFFECT OF INCLUDING UNIMPROVED PROPERTY IN CORPORATE LIMITS. Of the eighty acres included in the subdivision thus mentioned, about fifteen in one corner thereof were cut off from the rest by a ravine, and were never built upon or otherwise improved; but it did not appear that they were not originally laid off into town lots. *Held,* that this fact did not invalidate the incorporation.

3. ———: ———: TOWN PLAT. *Semble,* that it is not essential to the validity of such an incorporation that a plat of the town should be filed and recorded.

4. **Validity of Incorporation of Town of Houston**: PRESUMPTION AS TO TOWN PLAT. *Held,* that the disclosures of the record in this cause, together with enactments of the legislature of the state, authorized the presumption that a plat of the town of Houston, the validity of whose incorporation was in controversy in this case, had once been filed.

*Appeal from the Texas Circuit Court.*—HON. C. C. BLAND, Judge.

REVERSED AND REMANDED *(with directions).*

*Hines & Woodside* for appellants.

*Robert Lamar* for respondent.

BIGGS, J.—This is a proceeding in the nature of a *quo warranto* (chapter 132, Revised Statutes of 1889), and is directed against the defendant, who is charged with usurping and unlawfully exercising the functions of mayor of the city of Houston. The information is preferred by the attorney general of the state at the relation of several taxpayers, the main purpose being to test the legality of the incorporation of Houston as a city of the fourth class. The judgment of the circuit court was for the defendant, and the plaintiff has appealed.

Under the existing statute (Revised Statutes, 1889, chapter 30, article 1), there are two modes of incorporating cities, towns or villages, based on different conditions. If the city or town has been previously incorporated, the county court has no authority or jurisdiction over the proceedings for the change from the existing organization to the new. To effect a change in such a case, the municipal authorities must pass an ordinance to that effect and submit it to the legal voters of the city or town, and, if it is ratified by a majority of the voters voting at such election, it then becomes the duty of the mayor to issue his proclamation declaring the result. This completes the incorporation. But, if the town has not been previously incorporated, and its inhabitants should desire to become a city of the class to which its population would entitle it, then the proceedings for incorporation must be conducted in the county court. This is done by a petition signed by a majority of the inhabitants of the town, which must be set forth the "metes and bounds of their city or town and commons." If the court shall be satisfied that a majority of the taxable inhabitants have signed the petition, it must make an order declaring such town incorporated, and it is also made

the duty of the court to designate the first officers of the city, who shall hold their offices until the 'first general election of officers as provided by law, and until their successors shall be duly elected and qualified. R. S., sec. 977.

It is claimed by the respondent that, previous to May 6, 1893, the inhabitants of the town of Houston were not incorporated, and that, upon a petition of a majority of them, they by an order of the county court became incorporated as a city of the fourth class; that the respondent was appointed the first mayor of the city; and that by virtue of such appointment he was, at the time the present proceeding was instituted, exercising the duties pertaining to that position.

On the other side the contention is that the town was incorporated by an order of the county court, dated and entered of record on the eighth day of May, 1872. The respondent admits the order, but says that the attempted incorporation was invalid for the reasons that the limits of the town as set forth in the order were not described by metes and bounds, as required by law (Wag. Stat., 1872, ch. 134, art. 1, sec. 1); that no plat of the town filed and recorded, as required by the same statute (article III); and that about fifteen acres of agricultural land were included in the territory then attempted to be incorporated. If these objections are found to be untenable, it is conceded by counsel for the respondent that the incorporation of May 6, 1893, was unauthorized, and that the judgment of the circuit court must be reversed.

It is important that the limits of an incorporated city or town should be definitely fixed. Many reasons suggest this, among them the exercise of the taxing power by the municipal authorities and the enforcement of municipal ordinances and regulations. To that end the statute requires incorporated territory to

be described by "metes and bounds." In the order of the county court of November 8, 1872, the land comprising the territory of the town of Houston was described as *"the west half of the southwest quarter* of section number 5, in township number 30, north, of range 9, west."* It is claimed that this description is indefinite and insufficient. We have been unable to appreciate the argument in support of this. The eighty acres are described according to a legal subdivision, and we are puzzled to know how they could have been described by metes and bounds, except to start at a given corner and follow the surveyed line around them to the place of beginning. This would have added nothing to the description. It seems to us that the incorporated territory was sufficiently described in the order, especially as there is no testimony that there was any dispute as to the boundaries of the eighty acres as established by the governmental survey.

Neither do we think that the failure to file a plat invalidated the order of incorporation. The law of 1872 (2 Wag. Stat. p. 1327) required the owner of any land laid out for city or town purposes to make out and acknowledge a map, showing the lots, streets, alleys, commons, etc., and deposit the same in the office of the recorder of the county. It was made the duty of the recorder to record such plats in a book to be kept for that purpose. A similar statute is to be found in the prior revisions, commencing with that of 1835, except that the plats were not required to be recorded.

The primary object of a town plat is to show the land dedicated to public uses, and it has also the purpose of making a record of the subdivision of the land into lots, but has no direct relation to the act of incorporation. We are, therefore, not prepared to say that

VOL. 61—32

the absence of a plat would invalidate the corporate order, but we are inclined to the opinion that it would not. But our conclusion on this point need not be put solely on that ground. We think there is enough in the record and legislative enactments (of which we must take judicial notice) to authorize the presumption that a plat of the town was once filed.

Prior to 1872, there was no attempt to incorporate the town, although it is an old place and has had an existence for many years. Strange to say, however, there is no record evidence in the county of the origin of the town. Texas county, in which it is located, was organized by an act of the legislature, approved February 15, 1845. (Laws, 1844–1845, p. 29.) Commissioners were appointed to select a county seat. They selected the town of Houston, as appears by a subsequent act "respecting the sale and title of town lots in the town of Houston, the county seat of Texas county." (Session Acts, 1852–1853, page 438.) In that act the town of Houston was recognized as the county seat of Texas county, and the act further provided for the making of deeds to town lots sold by the commissioners of the county seat in behalf of the county, thus recognizing the county as the original owner or proprietor of the town. From these facts the presumption fairly arises that, when the town was originally laid out, a plat was filed, as we must assume that the officers of the county performed their legal duties. The fact that no plat could be found in 1872, is not evidence that one never existed, but rather that it had been lost.

There is some evidence that there are about fifteen acres of land in the northeast corner of the eighty acres, which have never been improved. A ravine separates this tract from the improved portion of the town. As the fifteen acres were included in the order

of 1872, it is insisted that, under the authority of *State ex rel. v. McReynolds*, 61 Mo. 203, the incorporation was void. The only evidence that the fifteen acres are pastoral or farming lands is that they have never been built on or otherwise improved. That is no proof that they were not originally laid off into town lots. In the *McReynolds case* the city authorities attempted to extend the city limits so as to include over one thousand acres of adjoining lands, which were confessedly used for farming purposes only. The distinction is obvious.

Our conclusion is that the order of the county court of November 8, 1872, incorporating the town, is valid, and, therefore, the proceedings of the county court of May 6, 1893, are void. The judgment of the circuit will, therefore, be reversed, and the cause remanded with instructions to the circuit court to enter a judgment of ouster against the defendant. All the judges concur.