BURNES *ex rel.* COOK, *Appellant*, v. THE CITY OF EDGERTON *et al.*

Division One, April 1, 1898.

1. **Cities**: INCORPORATION: INCLUDING AGRICULTURAL LANDS. The incorporation of a city of the fourth class by the county court so as to include agricultural lands not previously included within the incorporated village, which has been legally disincorporated, is not invalid. (Distinguishing *State ex rel. v. McReynolds*, 61 Mo. 203.)

2. ———: ———: ———: CASE STATED. In this case Edgerton was incorporated as a village in 1883, and legally disincorporated by the county court on March 2, 1891, and upon a petition of a majority of the taxable inhabitants of the town, setting forth the metes and bounds thereof, was incorporated by the county court as a city of the fourth class on March 23, 1891, and there was included within the new corporation a strip of land three hundred yards wide and half a mile long, which was separated from the original village by a public road and which had not been platted or laid out as an addition to the town, but constituted a part of relator's farm, a considerable portion of it being used for agricultural purposes. It is *held* that the incorporation of the town is not invalid because these agricultural lands were included within the new incorporation and were subjected to taxes for city purposes.

*Appeal from Platte Circuit Court.*—HON. WM. S. HERNDON, Judge.

AFFIRMED.

*A. D. Burnes* and *Harwood & Hubbell* for appellant.

(1) On March 2, 1891, the law empowering villages to change to cities of the fourth class was section 977, Revised Statutes 1889. (2) If the town or village is in-

corporated by the general, or any special law, such town or city could organize as a city of the fourth class only by passing an ordinance "and submitting the same to the legal voters of such city or town for ratification." Sec. 977, *supra*. (3) Any town not incorporated could become a city of the class to which its population entitled it by a petition to the county court. But the county court had no jurisdiction to disincorporate a town already incorporated for the purpose of organizing it into a city of the fourth class. (4) But if the county court, notwithstanding section 977, *supra*, could legally disincorporate a town already incorporated, so that it might immediately organize such town as a city of the fourth class, the county court could not enlarge the boundaries of such town. R. S. 1889, sec. 1580. Under this section the county court could not enlarge the boundaries of the town. That could only be done by the city through an election after it was organized as a city of the fourth class. *State ex rel. v. McReynolds*, 61 Mo. 203. (5) The statutory mode for a town already incorporated to change to a city of the fourth class, to wit, by ordinance and an election, was exclusive, and no other course could be resorted to. *Coates v. Acheson*, 23 Mo. App. *loc. cit.* 260; *Railroad v. Tel. Co.*, 112 U. S. 306. Where a statute gives a right and prescribes a remedy, that remedy must be pursued. *Stafford v. Ingersol*, 3 Hill (N. Y.), 41.

*John W. Coots* and *James W. Coburn* for respondents.

(1) Villages can be disincorporated. R. S. 1889, sec. 1714. (2) The village of Edgerton could not have added to its incorporated limits unless the lands sought to be added were platted as an addition and the plat filed with the recorder of deeds and then only with

the consent of the county court.   Such additions could be platted only by the owners of the lands, and so his consent was necessary to their incorporation.   Other lands, to make the boundary of the additions straight, could be incorporated without the consent of the land-owner.   (3)   Section 977, Revised Statutes 1889, provides that any unincorporated town or city may become a city of the class to which its population entitles it by presenting to the county court a petition setting forth the metes and bounds of such city or town, and its commons, etc.   (4)   Section 1580, Revised Statutes 1889, provides that the mayor and board of an incorporated city of the fourth class may, with the consent of the majority of the voters of said city, etc., "extend the corporate limits thereof over any territory lying adjacent thereto, or may, by the same vote, reduce the territory of such city to exclude land used for farming purposes."   Amendment to this section, Acts 1891, p. 61; *State ex rel. v. Campbell*, 120 Mo. 401; *City ex rel. v. McGee*, 128 Mo. 152; Acts of 1891, p. 61.   (5) Disincorporation for the purpose of reincorporation is not a new idea in this State.   *State ex rel. v. Tucker*, 48 Mo. App. 531.   (6)   The reasonableness of an ordinance extending the boundaries of a city of the fourth class is open to judicial scrutiny.   *City of Plattsburg v. Riley*, 42 Mo. App. 18.   (7) Estoppel may be invoked in cases of this character on the ground of laches.   *State ex rel. v. Westport*, 116 Mo. 582.

ROBINSON, J. —This is an information in the nature of a *quo warranto* instituted in the circuit court of Platte county in December, 1894, by the prosecuting attorney of that county, upon the relation of Andrew J. Cook, to determine the right and authority of the defendants to exercise the powers and duties of officers of the city of Edgerton, and to determine the validity of the in-

corporation of said city as a city of the fourth class under the laws of this State.

The petition alleges the original incorporation of the village of Edgerton; the due and legal disincorporation thereof, and avers that after the disincorporation of said village the county court of Platte county, without any lawful power or jurisdiction in the premises, attempted to reincorporate the territory comprised within the corporate limits of the former village of Edgerton as a city of the fourth class and extended its limits over a strip of land belonging to the relator, three hundred feet wide and about half a mile long, used for agricultural purposes, and constituting a part of a seventy-five acre farm owned by him. The petition also avers that the proceeding in the county court in attempting to incorporate the city of Edgerton was without jurisdiction and therefore null and void; and that the defendants under color of such proceedings and without any legal authority therefor were assuming jurisdiction over the three hundred feet strip of land so owned by the relator, and were levying and assessing taxes upon said strip, and upon the relator's personal property situated thereon, and compelling the relator to pay such taxes by levying upon and seizing such personal property; that all of the parcels and tracts of land outside of the eighty acres originally incorporated as the village of Edgerton are lands used solely for agricultural purposes and in no wise common or in any manner appurtenant to the town, village or city of Edgerton. The petition closes with the prayer that the defendants and each of them be divested of their usurped authority and that the pretended corporation of the city of Edgerton as a city of the fourth class, or in any wise as a municipal corporation, be declared a nullity. The answer admits the incorporation of the village of Edgerton, the previous disincorporation thereof, and that

the defendants are exercising the power and performing the duties as officers of the city of Edgerton. The answer further sets up that on March 23, 1891, upon a petition of the majority of the taxable inhabitants of the town of Edgerton, setting forth the metes and bounds thereof, the city of Edgerton was duly incorporated by the county court of Platte county under and by virtue of section 977, Revised Statutes 1889, as a city of the fourth class; and that defendants were the duly elected officers of said city, and have qualified as such and are lawfully exercising the duties thereof, setting forth in detail all the acts done by the inhabitants of said city and of the county court of the county of Platte in the act of the incorporation of said city.

The reply denied the allegations of new matter in defendants' answer, and the case then proceeded to trial by the court. The facts briefly stated are substantially as follows: On the fourth day of June, 1883, the village of Edgerton was duly incorporated by the county court of Platte county, and as appears from the plat thereof filed in the office of the recorder of said county, embraced and comprised within its limits the east half of the southwest quarter of section 8 in township 54 of range 33 situate in Platte county, containing eighty acres of land. On March 2, 1891, said town was duly disincorporated by an order of the county court of said county under the provisions of sections 1714 and 1715, Revised Statutes 1889, upon a petition of three fourths of the legal voters of said town. Thereafter on March 23, 1891, upon a petition duly made in accordance with the statute the county court, in compliance with the prayer of said petition, made an order incorporating the city of Edgerton as a city of the fourth class in conformity with the provisions of Revised Statutes of 1889, the order of incorporation being regular in form. The territory comprised within the limits of the city of

Edgerton as incorporated included the eighty acres of land upon which the former village of Edgerton was situated, together with about eighty-eight additional acres, included in which is the strip of land belonging to relator on the west side of the former village of Edgerton, as originally platted and laid out, three hundred feet wide and running north and south the full length of the quarter section and separated from the platted village of Edgerton by a public road.

This strip of land has not been platted or laid out as an addition to the town, but constitutes a part of the relator's farm, a considerable portion of said strip being used for agricultural purposes. At the time the city of Edgerton was incorporated it had a population of more than five hundred and less than three thousand inhabitants. The record shows that a part of the land included in the metes and bounds of said city, as last incorporated, consists of lands used for agricultural purposes and was outside of the limits of the platted town of Edgerton as originally incorporated. It further appeared that a portion of the land so added to the corporate limits of said city was, at the time of the order of incorporation, cut up into small tracts of less than five acres and occupied by dwelling houses and appurtenances and devoted to purposes purely urban; about an acre of the three hundred feet strip of land belonging to relator was occupied by a public graveyard; prior to the last order incorporating said city certain other portions of the added territory had been laid off by the proprietors thereof as additions to the town of Edgerton, and a plat showing the street, alleys, blocks and commons thereof duly acknowledged and recorded as required by law. It was also shown that since the incorporation of said city considerable of such added territory had been laid off into blocks, lots, streets and alleys, and plats thereof duly executed

and acknowledged by the proprietors thereof as required
by law and recorded in the office of the recorder of
deeds for said county, and many of the lots sold to
divers persons, and dwelling houses built thereon, and
that by reason thereof many private and public rights
have become vested therein. The map introduced by
the relator showed that a railroad runs through the
center of the three hundred foot strip in question.
That the requisite number of taxable inhabitants peti-
tioned the county court for an order of incorporation
of the city of Edgerton is not disputed, nor is it
questioned that defendants are the duly elected officers
of the territory so incorporated, provided the order of
the county court incorporating said city was legal. It
is admitted that the defendants are exercising the duties
and rights of officers of said city; and that they have
been levying, assessing and collecting taxes from the
inhabitants of said city upon the various strips of
land, among whom is the relator.

At the close of the testimony the relator asked the
following declarations of law: "If the court finds
from the evidence that the town or city of Edgerton, in
Platte county, Missouri, was legally incorporated on
the —— day of June, 1883, under the law providing
for the incorporation of villages; that the plat of the
town or city of Edgerton, filed in accordance with the
Revised Statutes of 1879, section 6569, shows that the
town or city of Edgerton includes the east half of the
southwest quarter of section 8, township 54, of range
thirty-three, and that said plat includes such territory
and no other and that the village of Edgerton, so
incorporated, as aforesaid, was legally disincorporated
on the 2nd day of March, 1891; that on the 23rd day of
March, 1891, the county court of Platte county, Mis-
souri, made a pretended order of judgment purporting
to incorporate as a city of the fourth class such original

territory, as above described, and the territory as shown by the evidence in addition to such original territory, about one hundred acres, or any number of acres of farm and agricultural lands; that no other valid order of incorporation was ever made by the county court of Platte county, Missouri, incorporating the town or city of Edgerton as a city of the fourth class; that said town or city of Edgerton has assessed, levied and collected taxes of relator upon his farm and agricultural lands so incorporated, along with the territory platted, as stated in the information herein, then the court will render a judgment of ouster against the said city of Edgerton and all parties exercising the rights and performing functions of municipal officers of said city." The court refused to so declare the law, and relator duly excepted. The court thereupon rendered final judgment in favor of the defendants. The relator then filed motions for a new trial, and in arrest of judgment which were overruled, and the relator excepted and perfected his appeal to this court.

The question thus presented by the record is, whether the county court of Platte county, by virtue of chapter thirty, Revised Statutes 1889, concerning the incorporation of cities, towns and villages, can incorporate the city of Edgerton and include agricultural lands outside of the limits of the original town or village so as to extend its boundaries beyond the limits of the territory originally platted and incorporated; in other words would the inclusion of lands other than those contained in the old village of Edgerton invalidate the intended corporation. Section 977 of the chapter just referred to, provides that "whenever a majority of the inhabitants of any city or town shall present a petition to the county court of the county in which such city or town is situated, setting forth the metes and bounds of their city or town and

commons and praying that they may be incorporated and· a police established for their local government and for the preservation and regulation of any commons appertaining to such city or town, and if the court shall be satisfied that a majority of the taxable inhabitants of such town have signed such petition, the court shall declare such city or town incorporated, designating in such order the metes and bounds thereof, and thenceforth the inhabitants within such town shall be a body politic and incorporated by the name and style of the city of ——— or the town of ———; and the first officers of such city or town shall be designated by the order of the court, who shall hold their offices until the first general election of officers, as provided by law, and until their successors shall be duly elected and qualified."

The above section is substantially identical with the section construed in the case of the *State ex rel. v. McReynolds*, 61 Mo. 203, so much relied upon by appellants and wherein the writ of *quo warranto* was awarded upon quite a similar state of facts to those shown herein as will appear by the two statements, the one herein made, following the order of that, with only the changes necessary in dates, names and description of property. But since the opinions in the *McReynolds* case sustaining the *quo warranto* proceedings, upon the construction of section 1 of article I of chapter 134, Wagner Statutes 1872, which as before said, is substantially identical with the present section 977, Revised Statutes 1889, upon the authority of which the city of Edgerton was incorporated, two new sections have been added to the statutes that lead us to conclude that the legislation must have intended that the scope of the statute, as construed in the *McReynolds* case, should be enlarged, and that the jurisdiction of the county court in the matter of incorporating cities and towns,

was not to be so restricted as declared in that opinion.

In 1887, section 4385, Revised Statutes 1879 (the same as the old section of Wagner Statutes 1872 construed in the *McReynolds* case), was amended so as to read: ''Any unincorporated city or town of this State may become a city of the class to which its population would entitle it under this article or any act amendatory thereof, and be incorporated under the law for the government of cities of that class in the following manner: Whenever a petition purporting to be signed by a majority of the assessed tax-paying inhabitants of such city or town shall be presented to the county · court of the county in which such city or town is situated, setting forth the metes and bounds of their city or town and commons, and praying that they may be incorporated and a police established for their local government and for the preservation and regulation of any commons appertaining to such city or town; the said court, if it be satisfied from the evidence presented, that such petition has been signed by a majority of the assessed tax-paying inhabitants of such city or town, as shown by the last assessment of said county, shall by its proper order, declare such city or town incorporated, designating in such order the metes and bounds thereof, and thenceforth the inhabitants within such bounds shall be a body politic and corporate under the name and style of the city of ———, or the town of ———; and said court in said order shall also designate the first officers of said city or town, who shall hold their offices until the next general election for such officers, and until their successors shall be elected and· qualified.

''SECTION 4885*b*. The word city or town, as used in the preceding section, shall be and is hereby construed to mean any collection of houses built upon contiguous and compact territory, not exceeding two

square miles in superficial area, and inhabited by a population sufficient to entitle it to incorporation under the provisions of this article and the several amendments thereto; and it shall not be necessary for, or a condition precedent to, the incorporation of such city or town that the land within its boundaries, as set forth in such petition for incorporation, shall have been subdivided into blocks or lots by deeds or plots filed for record in the office of the recorder of deeds for said county or elsewhere, nor shall the court refuse to incorporate such city or town for the reason that tracts of land exceeding five acres in area, and used solely for agricultural or pastoral purposes, are embraced within its limits, but such agricultural or pastoral lands may be included within the boundaries of such city or town, subject to such provisions for their taxation for city purposes as are now or may hereafter be prescribed by any law of this State." Laws of 1887, p. 34.

Thus it will be seen that the county court was given direct authority upon proper petition presented, to include within the metes and bounds of the city incorporated any collection of houses upon contiguous and compact territory of two square miles in superficial area, and the act further expressly declared that it shall not be necessary for, or a condition precedent to, the incorporation of such city or town that the lands within its boundaries as set forth in the petition for incorporation shall have been subdivided into blocks or lots by deed or plats filed for record, and that the court should not refuse to incorporate the city or town for the reason that the tracts of land included within the metes and bounds of the proposed city or town exceed five acres in area and are used solely for agricultural or pastoral purposes. While the above section has been amended and in its place we now have section 977, Revised Statutes of 1889, which is quite similar in its language to

the section as construed in the *McReynolds* case, we still have section 1580 of the same chapter treating of cities of the class to which Edgerton belongs, in which appears the following significant language: "The mayor and board of aldermen of such city, whether the same shall have been incorporated before becoming a city of the fourth class or not, with the consent of a majority of the legal voters of such city, voting at an election therefor shall have power to extend the corporate limits thereof over any territory lying adjacent thereto, or may, by the same vote, reduce the territory of such city to exclude land used for farming purposes. All agricultural or pastoral lands included within the corporate limits of such city shall be exempt from taxation for city purposes until they have, by recorded plats or sale, been reduced to tracts or lots of five acres or less." It would seem from the section last quoted that power to include within the corporate limits of the cities of the fourth class lands used for farming purposes, must exist in the body authorized by law in the first instance to incorporate such cities wherein such land may have been included, or the language therein would be unnecessary and without meaning. That part of the section just quoted was not in existence when the case of the *State ex rel. v. McReynolds*, 61 Mo. 203, was decided, and consequently that case is without force or application now in the light of the after legislation expanding the jurisdiction of the county court in the matter of incorporating cities and towns. In the case of the *State ex rel. v. Campbell*, 120 Mo. 396, which involved the right of the county court of Phelps county to include in the order incorporating the city of Rolla more than five acres of agricultural lands used solely for farming purposes, and not laid out in blocks, lots or commons, it was held, construing sections 977 and 1580, Revised Statutes 1889, that the inclusion of such

agricultural lands within the corporate limits of the
city of Rolla would not invalidate the intended incorpo-
ration.    SHERWOOD, J., who wrote that opinion said:
"It is claimed that the section just quoted (referring
to section 4385b, Acts of 1887) is still in force, but this
position is untenable; it was plainly repealed when the
amendment occurred as recited on the margin of sec-
tion 977. But notwithstanding 4385b was thus repealed,
it does not thence follow that because of this, the
inclusion of more than five acres of agricultural lands
(and solely for agricultural purposes) within the cor-
porate limits would defeat the intended corporation.
Very frequently it might become a matter of unavoid-
able necessity to include a few acres of agricultural
lands which after being thus included in the corporate
limits subsequently might be devoted to purposes
strictly urban. Indeed it may be said that section
1580 of the same chapter favors this idea, for that sec-
tion when treating of cities of the fourth class, says:
'The mayor and board of aldermen of such city,
whether the same shall have been incorporated before
becoming a city of the fourth class or not, with the
consent of a majority of the legal voters of such
city, voting at an election therefor, shall have power
to extend the corporate limits thereof over any territory
lying adjacent thereto, *or may, by the same vote, reduce
the territory of such city to exclude land used for farming
purposes.*' The words italicised evidently contemplated
that originally farming lands might have been included
within the corporate limits of a city, even under the
law of 1889." That opinion seems clearly in point
upon the only issue made by relator in petition filed and
instruction asked, and unquestionably gave sanction to
the action of the county court of Platte county in con-
struing the statute under which it was to act, on the
petition presented, to include the strip of land in

question, belonging to relator, within the corporate limits of the new city of Edgerton. The circuit court therefore properly refused relator's declaration of law. Finding no prejudicial error in the record the judgment will be affirmed. BRACE, P. J., and WILLIAMS, J., concur; MARSHALL, J., absent.