## STATE ex rel., CHANDLER, Appellant, v. HUFF et al., Respondents.

### St. Louis Court of Appeals, March 1, 1904.

1. **MUNICIPAL CORPORATIONS:** Order Incorporating Village:
   Collateral Attack.  An order made by a county court, incor-
   porating a village, is a judgment having the force and effect
   of other judgments rendered by courts of competent juris-
   diction, and is not open to collateral attack, unless it is void
   on its face.

2. ———: ———: Description of Territory.  The term "Wes-
   terly," in the description of the territory which is embraced in
   a village incorporated by order of the county court, means due
   west, and does not render such order void for uncertainty in
   the description.

3. ———: ———.  A county court has no jurisdiction to make
   an order incorporating a village which is already incorpor-
   ated.

4. ———: Quo Warranto: Parties.  The action of quo warranto
   will not lie to oust the officers of a *de facto* municipal corpora-
   tion, upon the ground that such municipality is not legally in-
   corporated, when the sole purpose of the proceeding is to test
   the  validity of the incorporation; such a proceeding must be
   brought directly against the municipality.

5. ———: ———: Laches.  Where a *de facto* municipality has
   acquired property, contracted debts and assumed jurisdiction
   over streets for fifteen or twenty years, a court, on the grounds
   of public policy, will not entertain an action to annul its au-
   thority.

6. ———: Repeal of Law.  The act of 1895 (sec. 108, p. 90, laws
   of 1895), relating to cities of the fourth class, while repealing
   the former law, did not have the effect to repeal the municipal
   charters obtained thereunder.

Appeal from Lawrence Circuit Court.—*Hon. H. C. Pepper,* Judge.

AFFIRMED.

*White & M'Cammon* for appellant.

(1)  That there was no plat filed of the land described in the petition for incorporation in 1871, did not invalidate the incorporation. State ex rel. v. Young, 61 Mo. App. 494.   (2)  The objection made by defendants to the description of the commons in the order of 1871, that the word "westerly" is indefinite, is not well taken.   "Westerly" has been frequently held to mean due west.   Seaman v. Hogeboom, 21  Barb. 398; Jackson v. Reeves, 3 Caines 293; Brandt v. Ogden, 1 Johns. 156; Bosworth v. Damizien, 25 Cal. 297.   (3)  The repeal in 1895 while Ash Grove was not operating under its charter of 1884, conceding that the court legally incorpoated it in 1884, revoked and annulled all rights that it had acquired by virtue of the order of the court incorporating it, for the reason that Ash Grove was not when said repealing statute was enacted, "operating" as a city of the fourth class and had not been so operating for seven years.   Webster defines the word operate: "To perform a work or labor; to act; to exert power or strength; to put into or continue in operation or activity."   Rosencrans v. Ins. Co., 66 Mo. App. 361; State ex rel. v. Railroad, 140 Mo. 539; Stone v. Howard Ins. Co., 153 Mass. 475, 27 N. E. 6; McKenzie v. Ins. Co., 112 Cal. 548, 44 Pac. 992; Ins. Co. v. Cotton Mfg. Co., 125 Ill. 131, 17 N. E. 775.   (4)  The incorporation of the town of Ash Grove by the county court in 1871, being valid never having been attacked in any direct proceeding for that purpose, the action of the county court in 1884 was void, and no rights, franchises nor powers vested in Ash Grove as a city of the fourth class

thereby.   (5)    That the city of Ash  Grove was per-
mitted from 1884 to July, 1888, to sue and be sued in the
courts of this State, did not constitute such a recognition
of the town as a city of the fourth class as to estop the
State or the relator from attacking the validity of such
incorporation directly in this proceeding.   As held in
numerous cases, the validity of the incorporation could
not be questioned in that collateral way.   The opinion in
State v. Fuller, 96 Mo. 167, offered in  evidence  ex-
pressly so states.   If the question could not be raised in
any of those cases how can an estoppel exist because it
was not raised.   This opinion, offered by defendants,
affords another instance of ''an engineer hoist with his
own petard.''   The same decision has been reached by
this court.   City of Billings v. Dunnaway, 54 Mo. App.
1; City of Clarence v. Patrick, 54 Mo. App. 466; City of
Trenton v. Devoras, 70 Mo. App. 12; State ex rel. v.
Mineral Land Co., 84 Mo. App. 39.

*Vaughan & Coltrane, J. C. Hayden* and *J. O. Mar-
tin,* City Attorney, for respondents.

(1)   The respondents contend that the incorpora-
tion of the original town of Ash Grove was void for two
reasons:   First, because the limits embraced about 160
acres of the agricultural lands; and, second, because the
description of its limits was uncertain and indefinite.
In either event the order of  incorporation was void
and it was not necessary to have the town disincorpor-
ated before an order could be made incorporating it as
a city of the fourth class.   If this point is well taken
for either of these reasons, then in 1884, when Ash
Grove was incorporated as a city of the fourth class,
the county court had the power to incorporate it by the
order made.   The following cases sustain the above
contention.   State ex rel. v. McReynolds, 61 Mo. 203;
State ex inf. v. Fleming, 158 Mo. 558; State ex rel. Lee

v. Jenkins, 25 Mo. App. 484. (2) County courts have exclusive jurisdiction to incorporate cities of the fourth class. The authority to act is conferred upon them by the filing of a petition. There were houses in this instance and people and lands, all the necessary ingredients to make a town as was said in 16 Mo. 88. Hence the county court of Greene county had jurisdiction to incorporate the city of Ash Grove in 1884. Its order is of the same force and effect as that of any other court having jurisdiction of a subject-matter. State v. Searcy, 39 Mo. App. 393; State ex rel. v. Young, 84 Mo. 90; State v. Evans, 83 Mo. 319; State ex rel. v. Weatherby, 45 Mo. 17. (3) The State and relator are both concluded on account of laches from denying the regularity and legality of the incorporation of the city of Ash Grove. It was incorporated in 1884 and for several years thereafter exercised its functions as a municipality. The State's agent, the county court, created it, and the State by proxy, was present at its birth and recognized its legitimacy. The State courts and officials subsequently recognized its corporate entity and can not after so long a time deny its legal existence and right to live. State ex rel. v. Westport, 116 Mo. 582; State ex inf. Jackson v. Mansfield, 72, S. W. 471; State v. Leatherman, 35 Ark. 81; 1 Beach, Pub. Corp. secs. 37 and 56; Jameson v. People, 16 Ill. 256; People v. Farnham, 35 Ill. 562; Copeland v. City of St. Joseph, 126 Mo. 434; High on Extra'y Rem. (2 Ed.), secs. 658-668.

STATEMENT.

On the information of the prosecuting attorney of Greene county, at the relation of W. T. Chandler, the defendant, T. Polk James, was required to show by what authority he exercised the office of mayor of the city of Ash Grove, in said county, and the other defendants by what authority they exercised the functions of common councilmen of said city. The controversy grew

out of the following two orders made by the county court of Greene county incorporating the town of Ash Grove. The first, made May 8, 1871, omitting caption, reads as follows:

"Now at this day comes a number of the citizens of the town of Ash Grove, in Greene county, Missouri, and file their petition asking that they be incorporated under the provisions of chapter 41, title 15, General Statutes of Missouri, said petition setting forth the following metes and bounds, embracing the following quarter of said town, that is to say: The east half of the north-west quarter of the southwest quarter, the east half of the southwest quarter of southwest quarter and the east half of the southwest quarter of section 21, township 30, range 25, and as commons to said town on the west side of said limits one quarter of a mile in a westerly direction. And the court being satisfied that two-thirds of the taxable inhabitants of said town have signed said petition, and that the prayer of said petitioners is reasonable, it is ordered and hereby declared that said town is hereby incorporated by and under and within the above described limits and shall be henceforth known as a body corporate by the name and style of the inhabitants of the town of Ash Grove. And it is further ordered by the court that J. F. G. Bentley, L. P. Downing, William Comegys, W. S. Hawkins, and Henry Hay be and they are hereby appointed trustees of said town of Ash Grove."

The second order, dated January 1, 1884, omitting caption, reads as follows:

"Now at this day comes on to be heard the petition of J. F. G. Bentley and other inhabitants of the town of Ash Grove, praying to be incorporated as a city of the fourth class under and by virtue of the provisions of article 1, chapter 89, Revised Statutes of Missouri. And said petition being by the court fully heard and carefully examined, and it appearing to the court from said hearing and examination of said petition, and from evi-

dence submitted that a majority of the taxable inhabitants of said town of Ash Grove in the metes and bounds hereinafter described, have signed said petition, and that said town contains a population of more than 500 and less than 5000. It is therefore by the court ordered that said city of Ash Grove be, and the same is hereby incorporated, and that the inhabitants within the following described metes and bounds, viz.: Beginning at a point in section 21 on the east side of the Walnut Grove road one-fourth of a mile south of the north line of said section 21, being the southwest corner of northeast quarter of northwest quarter of section 21, township 30, range 24, running thence west 20 rods, thence north 20 rods, thence west 40 rods, thence south 20 rods, west 20 rods, to the section line between sections 21 and 20, thence south one-fourth mile, west one-fourth mile into section 20, thence south 40 rods, thence west one-fourth mile, thence south 80 rods, thence east one-fourth mile to section line between sections 21 and 20, thence south one-fourth mile, thence east one-half mile to section line between sections 21 and 28, thence north one-half mile, thence west one-fourth mile to east side of Walnut Grove road, thence north one-fourth mile to beginning, all in township 30, range 24; shall be a body politic and incorporate by the name and style of the city of Ash Grove, and the following named persons shall be the first officers of said city of Ash Grove who shall hold their offices respectively until the general election for city officers in said city, to be held on the first Tuesday in April, 1884, and until their successors are elected and qualified: As mayor, David Allen; as marshal, Thomas McCall; as aldermen, W. C. Swinney, Wm. Comegys, J. W. B. Appleby and W. C. Crane.''

The town operated under the first order of incorporation until its officers were superseded by the officers appointed under the second order of incorporation. The city continued to operate under the second order of incorporation until April, 1888, when its councilmen re-

signed and the mayor and the marshal removed from
the town. The resignation of the councilmen was for
the purpose of avoiding the service of a threatened
mandamus on them to compel them to levy a special tax
against the inhabitants of the city to pay a judgment of
thirty-five hundred dollars recovered by Mrs. Sarah
Hurst against the city of Ash Grove, which had just
been affirmed by the Supreme Court. The judgment
was compromised and paid by voluntary contributions
of the citizens of Ash Grove on March 20, 1902. After
the satisfaction of the judgment, a justice of the peace
of Ash Grove called an election to be held in said city,
in May, 1902, for the purpose of electing city officers.
Pursuant to the call or notice of the justice of the peace,
an election was held at which respondent James was
elected mayor, and the other respondents elected council-
men of the said city, and they were duly inducted into
their respective offices and were discharging the duties
thereof when this proceeding to oust them was com-
menced. From April, 1888, until after the election in
May, 1902, the city was without any officer or officers
and made no effort to operate under either of the orders
of incorporation. At the time it ceased to operate as a
city, it is shown it was indebted to the marshal in the
sum of one-hundred and twenty-five dollars, which has
never been paid, and it also owed A. T. Weir, a lumber
merchant, eighteen dollars not yet paid. The second
order of incorporation takes in most of the land de-
scribed in the first order and a considerable territory in
addition thereto.

Over the objections of the relator the respondents
were permitted to prove that at the date of the first or-
der of incorporation (May 8, 1871) the village of Ash
Grove contained from one hundred to one hundred and
fifty inhabitants; that it owned no lands except, possibly
a jail lot, and that a large part of the territory taken in
by the order of incorporation was wild and uncultivated
land, not laid off in town lots or blocks and that other

portions of the territory consisted of agricultural lands not divided into lots or blocks for building purposes.

The judgment of the circuit court was for respondents. Relators repealed.

BLAND, P. J. (after stating the facts as above).— 1. The contention of relators is that having, in May, 1871, exercised its jurisdiction to incorporate the village of Ash Grove, the county court was thereafter without jurisdiction to again incorporate it, and especially so while the original order of incorporation was in force. This exact question was passed on by this court in State ex rel. v. Young, 61 Mo. App. 494, where the court said: "Under the existing statute (Revised Statutes, 1889, chapter 30, article 1), there are two modes of incorporating cities, towns or villages, based on different conditions. If the city or town has been previously incorporated, the county court has no authority or jurisdiction over the proceedings for the change from the existing organization to the new. To effect a change in such a case, the municipal authorities must pass an ordinance to that effect and submit it to the legal voters of the city or town, and, if it is ratified by a majority of the voters voting at such election, it then becomes the duty of the mayor to issue his proclamation declaring the result. This completes the incorporation." To avoid the force of this decision the respondents sought to show by the evidence, de hors the record, that the first order of incorporation was a nullity, and were permitted by the court to introduce evidence tending to establish its nullity. The order incorporating the village was a judgment having the force and effect of any other judgment rendered by a court of competent jurisdiction. State ex inf. v. Fleming, 147 Mo. 1; State ex inf. v. Fleming, 158 Mo. 558. For this reason the order of incorporation was not open to collateral attack. Kayser v. Trustees of Bremen, 16 Mo. 90; State ex rel. Read v.

· Weatherby, 45 Mo. 17; State v. Evans, 83 Mo. 322; Macey v. Stark, 116 Mo. l. c. 494; Leonard v. Sparks, 117 Mo. l. c. 108. If, however, as the respondent contends, the order of May 8, 1871, is void on its face, then it can not be said that the county court did at that time exercise its jurisdiction to incorporate the village of Ash Grove, for an order or judgment of a court that nullifies itself is as though it had never been entered, and jurisdiction in the county court would remain, notwithstanding the void order of May 8, 1871, incorporating Ash Grove as a village.

Respondents say the description of the commons in the order of May 8, 1871, as "westerly," is so indefinite and uncertain as to make the description of the territory attempted to be incorporated void. If the word "westerly" is construed to mean due west, then the description is not indefinite but is definite and certain. In Bosworth v. Danzien, 25 Cal. 296, it was ruled: "The term 'northerly' when used in a grant or conveyance, unless controlled by monuments in the description, means due north." In Brandt v. Walton, 1 John. Rep. 156, it was held: "The term 'northerly' in a grant, where there is no object mentioned to direct the inclination of the course toward the east or west, is construed to mean due north." In Jackson v. Clark, 3 Caine's Rep. *293, it was said that when "the courses are northward, southward, eastward, and westward, it is a settled rule of construction, that when courses are thus given, you must run due north, south, east and west." That the word "westerly" in the description of the territory incorporated, should be construed to mean due west, we think is supported by both authority and reason. We are, therefore, forced to the conclusion that the order incorporating the town on May 8, 1871, is not void upon its face. This leads to the conclusion that the county court of Greene county was without jurisdiction to make the order of January 1, 1884, incorporating Ash Grove as a city of the fourth class.

2. But the city of Ash Grove is not made a party defendant. In State ex rel. v. Coffee, 59 Mo. 59, it was ruled that *quo warranto* would lie to oust the respondent, who was holding the office of mayor of the town of Knobnoster, on the ground that the special act of the Legislature incorporating the town was void. But it does not appear in that case that the proceeding was commenced for the sole purpose of testing the validity of the corporation. In Reg. v. Jones, 8 Law Times Rep. (N. S.) 503, and in Williams v. Sacramento County, 58 Cal. 238, the proceedings in each case were brought against the officers of the municipal corporation and the municipality was not made a party defendant, and it appeared from the complaint that the real purpose of the proceeding was to test the legality of the municipal charter. It was held that the municipalities were the real parties in interest and necessary parties defendant, and the courts refused to permit the charters to be repealed by a judgment of ouster against the officers. Substantially the same ruling was made in the case of State v. Atlantic Highlands, 50 N. J. L. 1. c. 458; Holloway v. Dickinson, 54 Atl. Rep. 529; State ex rel. Weinsheim, v. Leischer, 94 N. W. Rep. 299. High, in his work on Extraordinary Remedies, under title of "Quo Warranto," at section 696, says: "The information will not lie against a municipal officer, as the mayor of a city, when the real purpose of the application is to test the legality of the municipal charter, since the courts will not permit a charter to be repealed in a proceeding directed, not against the corporation, but against an individual corporator or officer." Unquestionably, the municipality is the real party in interest and for this reason is a necessary party and should be made a party defendant. Section 444, R. S. 1899. Nominally, this proceeding is to oust the defendants from their offices, but it is apparent on the face of the information, and put beyond doubt by the evidence offered at the trial by the relator, that the real object of the

action is to deny to the city of Ash Grove the right to operate as a city of the fourth class by obtaining a judgment which, in effect, would repeal the order of January 1, 1884, incorporating it as a city of the fourth class; no other cause is attempted to be made against the respondent except as it is made through the invalidity of the charter. The sole purpose then of the proceeding is to test the validity of the charter. We think it is indispensable that the proceeding should have been brought directly against the city and that the trial court for this reason, if no other, rendered the proper judgment.

3.    The old English cases fixed a period of twenty years as the limit in which an information to test the validity of a city's charter might be filed. Subsequently the courts reduced the period to six years. Rex v. Dicken, 4 T. R. 282. This period was afterwards fixed by statute. 32 George III, ch. 58. In State ex rel. Town of Westport, 116 Mo. 582, it was held that twelve years, where the corporation had been operating and recognized by the courts and legislators of the State, was a sufficient period to estop the State on the ground of laches to call in question the validity of the charter. It seems to us that on grounds of public policy the period of limitation in which informations of this character may be filed should be fixed by statute. In the absence of such a statute the courts in the exercise of a wise discretion upon the grounds of public policy should, as was done in the Westport case and in the case of State ex rel. v. Town of Mansfield, 99 Mo. App. 146, refuse to repeal the charter of a municipal corporation which had stood unchallenged for a period of ten or fifteen years, when the municipality has acquired property and contracted debts and assumed jurisdiction over the streets and alleys of the city, and to preserve the public peace of the community. People ex rel. Hanker, 64 N. E. 253.

4. The corporation was not affected by section 108 Laws of 1895, p. 90, as contended by the relators. The meaning of that section is that the Act shall not have the effect to repeal municipal charters obtained under the laws repealed by the act. The section repeals the laws under which these charters were obtained, but does not repeal the charter themselves.

The judgment is affirmed. *Reyburn* and *Goode*, *JJ.*, concur.