## STATE ex rel. WHITE et al., Respondents, v. SMALL et al., Appellants.

### St. Louis Court of Appeals, April 28, 1908.

1. **COUNTY COURTS: Incorporation of Village: Farm Lands.** Under the provision of the first half of section 1666, Revised Statutes 1889, section 6004, Revised Statutes 1899, a county court in incorporating a village exceeded its authority by including in the village 640 acres of land all of which was used for agricultural purposes except thirty or forty acres occupied by the village, so that such order of incorporation was a nullity.

2. **QUO WARRANTO: Parties: Incorporation of Village.** In a proceeding by *quo warranto* against the acting officers of a village, whose authority to act was denied on the ground that the town had no corporate existence, the town itself was not a necessary party.

3. ———: ———: ———. And in such action where the corporate existence of the village was questioned on the ground that the order incorporating it included agricultural land, farmers and taxpayers within the territory sought to be incorporated had such a special interest in the matter as to entitle them to maintain an action of *quo warranto* on an information filed at their relation by the prosecuting attorney of the county.

4. ———: ———: ———: **Laches.** In a proceeding by *quo warranto* challenging the right of alleged town officials to act as such on the ground that such town had never been properly incorporated, the relators were not guilty of laches, such as to preclude their recovery, where the order of the county court attempting to incorporate the town was made ·eleven years before the action was brought, but the town government was not organized nor taxes levied until two or three years before the action was brought.

Appeal from Mississippi Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Russell & Deal* for appellants.

(1)    When the sole purpose of the proceedings
is to have a village organization declared illegal, the
courts have uniformly held that judgment of ouster
should not go against the officers of the municipality un-
less it is made a party defendant. State ex rel. v. Huff,
105 Mo. App. 354; 19 Am. and Eng. Ency. of Law (1
Ed.), 675.    (2)    The State, who alone has the right
to complain is not now and never has deemed it proper
to question the legal existence of this municipality and
we question the right of relators to prosecute this ac-
tion, when their sole purpose seems to be to have the
village organization declared illegal, and especially
when it appears that the land which two of the relators
now own, was owned by men, who by their petition,
asked the county court to include their agricultural
lands within the corporate limits.    19 Am. and Eng.
Ency. Law (1 Ed.), p. 677.

*Boone & Lee* and *Joslyn & Haw* for respondent.

(1)    This attempted act of incorporation was in
1897, at that time the county court had authority to
incorporate into a village only such lands as were platt-
ed and recorded and the commons appurtenant thereto.
R. S. 1889, sec. 1666.    Under this statute the incorpora-
tion of agricultural lands into a village rendered the
act of the county court null and void.    State ex rel. v.
McReynolds, 61 Mo. 204; State ex rel. v. Jenkins, 25
Mo. App. 489.    (2)    Quo warranto is the proper rem-
edy in this case and it is not necessary to make the cor-
poration a party.    The object of this proceeding is to
oust appellants from office, because they are assuming
to exercise the functions of an office which has no legal
existence, the persons usurping the illegal office are the
only proper parties.    State ex rel. v. Coffee, 59 Mo.
59; State ex rel. v. Gravel Road Co., 116 Mo. App. 193;

State ex inf. v. McClain, 187 Mo. 409; State ex inf. v. Fleming, 147 Mo. 1.

GOODE, J.—This is a proceeding in the nature of *quo warranto,* charging the defendants with usurping and exercising the rights and duties of the trustees of the village of Anniston, in Mississippi county, and in the capacity of trustees enacting ordinances, levying taxes and prescribing police regulations over the land and property of the relators. The information was filed by the prosecuting attorney of Mississippi county at the relation of Jesse S. White, Homer Lynn and J. L. Busby. In addition to the charge of usurpation against defendants, the information avers the village of Anniston never was incorporated legally and had no corporate existence; that the lands of relators are and ever since the pretended incorporation of the village in 1897, have been, inclosed farms used for agricultural purposes exclusively; that the order of the county court attempting to incorporate said village embraced the entire area of section 9, township 25, range 16, within the boundaries of the village, though the village proper contained but forty acres and the remaining six hundred thereof were agricultural lands then and now used and occupied as farms, not platted, and constituting no part of commons appurtenant to the village. In their return to the writ the defendants averred facts to show they are eligible for village trustees, and were elected trustees of the village of Anniston, in April, 1906, and have qualified as such. They aver the county court of Mississippi county on March 3, 1897, pursuant to a petition of two-thirds of the taxable inhabitants of the town of Anniston, incorporated said town, designating in the order of incorporation its metes and bounds so as to embrace all of said section nine; since said date Anniston has been a body politic and corporate and its trustees have passed by-laws and ordinances. It is

further averred as follows: the sole purpose of the information is to have the order of the county court incorporating Anniston, declared void, and therefore the village itself .is a necessary party to the proceeding; since the incorporation a large part of the land within the boundaries, to-wit: ninety acres, has been laid off and platted as an addition to the town, and streets and alleys have been opened therein, and lots sold to purchasers; the State of Missouri and the public have recognized Anniston as a body politic for more than nine years, and the State has levied and collected taxes on lots therein; the territory within its limits has been excluded from road districts and the town has levied taxes, enforced ordinances, improved streets and sidewalks, and done many other acts within the charter powers of towns and villages, and should the town be ousted of its franchises, all said acts would be rendered illegal and future acts of the same kind prevented. It is further averred two of the three relators have no lands used exclusively for agricultural purposes in the town limits, and therefore have no interest in this proceeding, and the other relator, Busby, purchased the land he used for agricultural purposes after the town was incorporated, knowing the land lay within the corporate limits. A reply was filed, putting in issue the averments of the answer regarding the acquiescence of the State and public in the corporate existence of the town, reasserting the invalidity of the order for its incorporation as a body politic, and averring Anniston did not attempt to exercise corporate franchises over the lands of relators until 1906, when relators protested against such exercise. It is alleged the village has acquired no property, contracted no debts, made no improvements other than to work the streets and alleys of the platted district, and, therefore, no injustice will be done by annulling the order of the county court for its incorporation. The testimony shows the ham-

let of Anniston at the date of the order to incorporate it, had from four to five hundred inhabitants and covered thirty-five acres of land in section nine. A petition was presented to the county court for the incorporation of the entire section under the name "Inhabitants of the Village of Anniston," and this was done by an order entered March 3, 1897. On said date six hundred acres or more of the land in the section were devoted to agricultural purposes and composed of farms with residences and other farm buildings on them here and there. In April, 1904, seven years after the attempt to incorporate, an addition to the town covering eighty acres was platted, and a few houses have been built on a small portion of this addition. Outside the area covered by it and the area covered by the original hamlet, the entire section is yet in farms; that is to say, five hundred and twenty acres or more are farm lands. There are four miles of country roads running through the section, and in all respects it is like any other farming country, consisting of cultivated fields, meadows and forests. These relators own farms in section nine, and though perhaps they acquired their lands, or part of them, after the date of the order incorporating the section as a village, it is in proof nothing was done toward organizing a village government or exercising the powers of a municipality, until 1902, five years later; at which time a board of trustees, and a town marshal were elected. During three years more no taxes were levied on outlying lands, the first attempt to tax such property having occurred in 1905. The present suit was instituted at the October term, 1906, after the taxes on relators' lands had been returned to the county collector as delinquent. Since the alleged incorporation of the town it has been dwindling rather than increasing in population. In looking over the delinquent tax list for the year 1905, as turned over to the county collector for collection, we find among

the farms against which taxes were levied, one hundred and twenty acres belonging to relator Busby. The other farms in the delinquent list range in area from forty to one hundred and twenty acres, or perhaps more. The circuit court found in its decree about five hundred and fifty acres of section nine were still used as farms and not for urban purposes; no part of the same was used as a public park or commons, and the lands of relators were agricultural lands within said section; wherefore it was considered and adjudged the defendants were acting as trustees for the village of Anniston unlawfully and that they be ousted, prohibited and excluded from exercising or using the powers of said offices. The defendants appealed.

1. In a case involving the question before us, the Supreme Court decided an order of a county court incorporating a town or village, and inclosing within the limits of the town large tracts of land devoted exclusively to agricultural purposes, was void for lack of statutory power in the county court to make the order. [State ex rel. v. McReynolds, 61 Mo. 203.] The statute construed was an act of the General Assembly approved February 8, 1871, constituting section 1 of chapter 134, page 1314, of Wagner's Statutes of the edition of 1872; which section corresponds with the first half of section 1666 of the Revised Statutes of 1889, under which the county court of Mississippi county acted in incorporating the village of Anniston. [R. S. 1899, sec. 6004, 3 Ann. Stat. sec. 6004.] The part of the statute on which the decision of the McReynolds case turned, provided that whenever two-thirds of the inhabitants of a town or village of this State should present a petition to the county court of the county wherein the town or village was, setting forth the metes and bounds of their village and commons, and praying they be incorporated and police established for their local government and the preservation and regulation of any commons appur-

tenant to such town or village, the county court might declare such town or village incorporated, designating in the order the metes and bounds thereof. The Supreme Court held said statutory provision only conferred power on the county court "to incorporate towns and villages and their commons;" then inquired what was meant by the words "a town and its commons," and answered the inquiry by interpreting the statute relating to "Town and City Plats." The latter statute provided that whenever a city, town, or village, or any addition thereto, should be laid out, the proprietor of said city, town or village, should cause an accurate map or plat of it to be made, setting forth and describing all parcels of ground within the town, village, or addition, "reserved for public purposes, by their boundaries, course and extent, whether they be intended for avenues, streets, lanes, alleys, commons or other public uses." [Wagner Stat., 1327, art. 3, sec. 1, ch. 134.] It was held the word "commons" as used in the section last quoted and in the section empowering county courts to order the incorporation of a town or village (sec. 1, p. 1314) had the same meaning, i. e., public grounds belonging or appurtenant to the town or village and not farms or agricultural lands in the vicinity. Wherefore the Supreme Court declared any attempt by a county court to incorporate farming lands of the county lying within the vicinity of a town, would be ineffective and void. The next inquiry in the case was whether the incorporation of outlying farm lands of large extent rendered the entire order of incorporation void, or only left it void so far as it included agricultural lands in the municipality and valid as to the territory platted and laid out in lots, streets, alleys and commons. The court held the inclusion of farm lands rendered the order void *in toto,* because it could not be known whether the petitioners for the order to incorporate would have desired the order if it embraced only

lands covered by the village proper, or whether the county court would have been willing to incorporate said lands and no more. The McReynolds case has been commented on in later cases for the purpose of showing it was not a precedent for their decision, because of statutory changes since it was decided. [State ex inf. Fleming, 158 Mo. 558, 59 S. W. 118; Burnes v. City of Edgerton, 143 Mo. 563, 571, 45 S. W. 293; State ex rel. v. Campbell, 120 Mo. 396, 25 S. W. 392.] But those cases approve the McReynolds opinion as a sound construction of the statute on which it was given, and indicate the changes in the statutes which rendered the doctrine of the opinion inapplicable to the later cases. Its doctrine is to be applied as construed by the Supreme Court in State ex inf. v. Fleming, 158 Mo. 1. c. 566, wherein it was said that though a county court had no right to incorporate farming lands in cities or towns, yet lands used for farming purposes alone might become so surrounded by lands used for town purposes as to render it necessary to include tracts of farming lands within the boundaries of a town, as otherwise a community would be prevented from incorporating by the fact some of its inhabitants used property within the proposed town district for farming purposes; whereas the general character and fitness, use and adaptability of the incorporated district as a whole, and not the use for which a small fraction of it might be employed, must determine what constitutes a city or town, and the authority of a county court to incorporate it as such. What has been said on the subject in subsequent opinions shows the rule declared in the McReynolds case remains unshaken and throws light on the proper use of it. The statute on which the county court of Mississippi county acted in incorporating the village of Anniston, was the same, for the purposes in hand, as the statute on which the McReynolds decision was pronounced. As was pointed out in Burnes ex rel.

v. Edgerton, 143 Mo. supra, statutory amendments were enacted afterwards which materially increased the authority of county courts in respect of including outlying lands in an order to incorporate a town or village. But still later amendments were made which brought the statute in force in 1897, relating to the incorporation of towns and villages by the orders of county courts, into substantially the form of the statute on which the McReynolds case was decided. Anniston was incorporated as a village under the first clause of section 1666 of the Revised Statutes of 1889, and the statutory provisions regarding cities of the fourth class which were invoked in State ex rel. v. Campbell, 120 Mo. supra, are not relevant. The opinion in the Campbell case expressly approved (loc. cit. 402) the doctrine of the McReynolds case, but held it inapplicable to cities of the fourth class, because the aldermen of such cities were empowered to reduce the municipal area by excluding lands used for farming purposes. No such power was conferred on the trustees of villages by any statute in force prior to the date of the present suit, though it has been conferred since by an act approved March 20, 1907 (See Session Acts 1907, p. 109). It is clear, in view of what has been said, the McReynolds case must furnish our rule of decision. A gross abuse of authority occurred when the county court of Mississippi county incorporated an entire section as part of the village, which occupied at the time about thirty or forty acres of land; and under the authority of the McReynolds case, we must hold the order of incorporation a nullity.

2. But it is said the order cannot be annulled in the present proceeding because the village of Anniston has not been made a defendant, and as the corporate life of the town is attacked, it was a necessary party. Support is lent to this position by the opinion in State ex rel. v. Huff, 105 Mo. App. 354, 79 S. W. 1010; but

State ex rel. v. Small.

the point was not essential to the decision of said cause, and the ruling ought to be disapproved; for it is opposed not only to the current of authority, but to decisions of our Supreme Court. The doctrine is accepted that when, in a *quo warranto* proceeding, or one in the nature of *quo warranto,* the existence of a municipality is denied, the proper respondents are the usurping officials who wield municipal powers; and to make the town a party is illogical, because thereby its existence would be implied, which is the very fact denied. This proposition was decided in State ex rel. v. Coffee, 59 Mo. 56, 67; State ex rel. v. M'cReynolds, 61 Mo. 203, 212; State ex inf. v. Fleming, 147 Mo. 1, 9; 158 Mo. 558, 567; State ex inf. v. McClain, 187 Mo. 409, 412, 86 S. W. 135; State ex rel. v. Gravel Road Co., 116 Mo. App. 175, 193, 92 S. W. 153; 17 Enc. Pl. & Pr., 437. A judgment of ouster against the officers of a city, or a finding in a suit against them only, that the city had no legal existence, might not be binding on the municipality itself if, in truth, it was legally incorporated. But the cases all hold the legality of its incorporation may be drawn into question in *quo warranto* against the officers. The Coffee case, supra, was against the defendant for usurping the office of mayor, and the Supreme Court said the question arose whether the corporate existence of the town could be tried and passed on in such a proceeding. It was declared *quo warranto* would lie against those who assumed to exercise the corporate franchises of a town, and in such a case whether or not a town had been legally erected could be tested; citing People v. Carpenter, 24 N. Y. 86, wherein it was ruled the legality of the incorporation of a municipality might be determined in a *quo warranto* proceeding against one exercising the office of supervisor of the town. The other cases cited are to the same effect, and there can be no doubt what the law is on this question.

3. It is said this information will not lie because it was filed at the instance of private relators and not in behalf of the sovereignty of the State, which alone may challenge the existence of a municipality.    The McReynolds case was in the same form and so was State ex inf. v. McClain, 187 Mo. supra.    These relators are farmers and taxpayers within the territory of the village and have a special interest which is sufficient to maintain the case under section 4457 of the Revised Statutes of 1899.    [See 23 Am. and Eng. Ency. Law, 616; 17 Ency. Pl. & Pr. 430, 431.]    The question was discussed in the McClain case (187 Mo. l. c. 412) and it was held a taxpayer of the school district whose legality was in dispute, might maintain *quo warranto* on an information filed at his relation by the prosecuting attorney of the county, if, in its discretion, the circuit court would permit the information to be filed.

4. Lastly, it is contended the judgment of ouster should be reversed because the village has been in existence eleven years without challenge from the relators or the State; and, because too, there is in force now a statute authorizing county courts to exclude farm lands from the limits of a village.    This court is no friend to suits to destroy municipalities unless there is a strong equity, and so our opinions show.    [State ex rel. v. Mansfield, 99 Mo. App. 146, 72 S. W. 471; State ex inf. v. Huff, 105 Mo. App. 354, 79 S. W. 1010.]    In those cases the gist of the decisions was that delay in the nature of laches had occurred in assailing the legality of the towns; a defense upheld by the Supreme Court in State ex rel. v. Westport, 116 Mo. 583, 22 S. W. 888. But nothing resembling laches appears in the present record.    It is true the order for incorporation was made in 1897, and this action was instituted in 1906.    But it is true also, no attempt to organize a city government was made until 1902, and for several years thereafter taxes were not levied against the lands of the relators

and they had no grievance.   As soon as the city authorities undertook to treat their lands as part of the village and subject to municipal burdens, relators acted. The act of 1907, authorizing county courts to exclude farm lands from the territory of a village, was not passed until after judgment had been given by the circuit court in the present case.   Moreover, under the McReynolds case relators possess a legal right to have the order for the incorporation of Anniston annulled as void from the first; whereas the act of 1907 merely permits county courts, in their discretion, and on the petition of a majority of the taxpayers of a village, to circumscribe the corporate limits so as to leave out agricultural lands.   It might be impossible to procure the requisite petition and, if procured, the county court might choose not to grant the relief prayed.   Hence to remit relators to said remedy, would be to refuse to enforce a right the law gives them on the chance of their obtaining relief from a tribunal which is not bound to grant it.

The judgment is affirmed.   *Nortoni, J.,* concurs; *Bland, P. J.,* dissents on the ground that the village of Anniston is a necessary party defendant to the action. [State ex rel. v. Huff, 105 Mo. App. 354.]