State ex inf. v. Fleming.

THE STATE on Information, CROW, Attorney-General, and HEIDORN, Prosecuting Attorney, v. FLEMING et al.

In Banc, November 13, 1900.

1. **Incorporation of City**: JUDGMENT: RES ADJUDICATA. Neither the State, nor its Attorney-General, nor its prosecuting attorney can by *quo warranto*, or by any other writ or independent process known to the law, question the validity of the incorporation of a city by the county court of the county, acting within the scope of its constitutional and statutory authority, unless fraud and collusion on the part of such court is charged and proven, or unless fraud has been so practiced upon it, in the matter of procuring the order, that for that reason it might be treated as fraudulent. Unless such is shown, such judgment is final and conclusive, binding on all courts.

2. ————: PETITION SIGNED BY MAJORITY TAXABLE INHABITANTS: JURISDICTION. In a suit to have declared void the incorporation of a city, the question of whether or not the petition therefor was signed by a majority of the taxable inhabitants of the district is immaterial, because such fact was not jurisdictional—was not necessary to the county court's right to hear and order the incorporation of the town or city. And for the same reason, the question of who are taxable inhabitants is immaterial. And said court, having authority to determine such facts on the filing of a petition purporting to be signed by a majority of the inhabitants of the district, its finding thereon can not be inquired into, except on appeal or writ of error, and certainly not by *quo warranto*, unless illegality in the proceedings or fraud in the procurement of the order was practiced.

3. **Quo Warranto**. *Quo warranto* is not a writ of correction or review.

4. ————: CHARACTER OF PROOF AND PLEADING: INCORPORATION OF TOWN. To assail an order of the county court incorporating a city or town, or to disturb the result of its judgment, by *quo warranto*, all the essential infirmities and iniquities of such order, resulting from the manner of its procurement or the fraud of the court, must be alleged and proven with the same strictness that would be required in a bill of equity having for its object the annulment of the final judgment of a court of record. But if there has been fraud the writ of *quo warranto* will avail to oust the city of its incorporated rights.

State ex. inf. v. Fleming.

5. **Incorporation of Towns:** PASTURE LANDS.  The incorporation of a town can not be declared illegal because one or two inhabitants therein, at the time of such incorporation, were temporarily using a few lots or blocks for what they called agricultural or pastural purposes.  It is not the use for which a small fraction of the designated district may be employed, that determines whether the statutory conditions necessary to incorporation are present, but the general character, fitness, use and adaptability of the united whole.  The incorporation will not be defeated by lands used for agricultural purposes solely, if they have become so surrounded and connected with lands used for town and city purposes as to constitute a part thereof.

6. ————: EXTENSION OF LIMITS: PARTIES DEFENDANT.  A suit to have declared void the incorporation of a city, on the ground that the ordinance extending its corporate limits was not approved by a majority of its qualified voters, must be brought against the city itself, and not its officers.

*Certiorari.*

WRIT DISMISSED.

*Edward C. Crow,* Attorney-General, *Frederick A. Heidorn, John F. Shepley* and *Charles S. Reber* for relators.

*Webster & Webster, G. A. Finkelnburg* and *Dawson & Garvin* for respondents.

.ROBINSON, J.—Since the opinion of this court on the motion to strike out from informants' reply certain allegations of facts therein stated, reported in 147 Mo. 1, and the further action of this court, in denying informants' application to have the city of Webster Groves made a party to this cause, made after the case was argued and submitted upon its merits, but little now remains to be said.  For a full history of the case and the records of the proceedings, reference is made to the statement accompanying the opinion on the motion to

strike out allegations of informants' reply. Briefly stated, however, it may here be said that informants by this proceeding, seek to have declared void by this court, the original incorporation of the city of Webster Groves by the county court of St. Louis county on the —— day of April, 1897, for the reason, as claimed by them, first, that the order of the county court was improvidently and fraudulently entered without evidence or information that the signers to the petition, presented to it, were a majority of the taxable inhabitants of the unincorporated town; second, that the boundaries of the unincorporated town were different from and included less territory than the boundaries of the city, as incorporated by the county court; and, thirdly, because a majority of the taxable inhabitants of the district incorporated did not as a matter of fact sign the petition upon which the county court acted; and, further, it is contended, that if informants are wrong on these propositions, still the ordinances of the so-called city, extending its limits so as to include and take in the territory surrounding Webster Groves was void for the reason that it was not approved by a majority of the qualified voters of the so-called city of Webster Groves, and in the second place, because the ordinance so passed was and is unreasonable. The informants in the institution of this proceeding may then be said to have had in view the twofold object, first, to have this court declare void the original incorporation of the city of Webster Groves by the county court; but if failing in that, to have its ordinance, subsequently extending the limits of said city, declared void.

From the testimony taken, it appears that a petition purporting to be signed by a majority of the taxable inhabitants of the unincorporated town of Webster Groves was presented to the county court of St. Louis county, in which the metes and boundaries of the town were set out and defined therein,

State ex inf. v. Fleming.

and that said petition concluded with a prayer for the incorporation of said town under the name and style of the city of Webster Groves. The records of the county court further show that it found as a matter of fact, that the petition presented was signed by a majority of the taxable inhabitants of said town, and that said town had more than two and less than three thousand inhabitants. Thus, every fact necessary to give the county court jurisdiction of the subject-matter, and to make the order of incorporation, is affirmatively shown by the records, if it were essential that all such facts should appear, to give validity to the order and judgment of incorporation.

While this court in disposing of the motion to strike out part of informants' reply, in its opinion *supra,* did assume that the action of the county court, in making its order incorporating the city of Webster Groves under the facts as charged in informants' petition, was subject to direct attack through the medium of the writ of *quo warranto,* and that *quo warranto* was the proper method of procedure, in a case of the character charged, it did not hold, nor can the faintest impression be drawn from what was said therein, that under a state of facts such as was disclosed by the testimony taken, the writ of *quo warranto,* or for that matter, any other writ or process known to the law, is adequate to relieve against the order and judgment as entered at that time by the county court.

That order and finding of the county court under the circumstances made, is final and conclusive, binding alike upon this and all other courts. That court, in such inquiries, is the agent of the State, exclusively authorized and empowered to ascertain and determine those very facts, and the State, through its Attorney-General, or its prosecuting attorneys of the different counties of the State, can not question

Vol. 158 mo—36

the act of the State's court agent, acting within the scope of its authority, unless fraud and collusion on the part of such agent is charged and proven, or unless fraud has been so practiced. upon it, in the matter of procuring the order, that for that reason it might be treated as fraudulent. Here the charge of fraud upon the part of the county court in making its order is most vague and indefinite (if such a charge, in fact, can be said to be made in relators' petition warranting the issuance of the writ in the first instance), and from the testimony taken, not the slightest suggestion of fraud, collusion or improper conduct on part of the county court whatever is shown, but the entire energy of the prosecution has been spent in the vain attempt to show that a majority of the "taxable inhabitants," of the body incorporated, had not signed the petition, presented to the county court, by which expression, "taxable inhabitants," relator interprets as meaning every person living within the territory incorporated, who might or should be taxed, in contradistinction to those who had been actually assessed or rated for taxation for the year during which the petition was presented to the county court for its action and determination. If the county court had jurisdiction in the premises (and by our statute exclusive authority is vested in that body alone to incorporate the unincorporated towns and cities of our State), the question whether or not the petition was signed by a majority of the taxable inhabitants of a given district is immaterial, as is also the question of who are comprehended by and to be included within the designation "taxable inhabitants." These are not jurisdictional facts, essential to the county court's right to hear and determine the matter, but facts the existence or nonexistence of which the court must determine upon after it has acquired jurisdiction. The jurisdiction of the county court in this matter attached by the filing of the petition with it,

signed by what purported to be a majority of the inhabitants of the district sought to be incorporated, and no mere error of judgment, on the part of that body, in the matter of computing the fact, as to the real number of the inhabitants of the incorporated district, or error of judgment on its part as to the question of law, as to who of the designated community are to be reckoned and counted as "taxable inhabitants," can be inquired into by this or any other court, to arrest or disturb the force of the finding and judgment, or to correct a possible error of fact or law, that court might have made in the course of its inquiry, unless illegality in the proceedings or fraud in the procurement of the order was practiced, which at the time could not reasonably have been foreseen and averted. The action of the county court in that matter was judicial, and its error, if error it made in judgment, can not be brought to this court for review by the writ of *quo warranto*. *Quo warranto* is, in no sense, a writ of correction or review. To assail an order of the county court in the matter of incorporating a city or town; or to disturb the result of its judgment, through the office of the writ of *quo warranto*, all the essential infirmities thereof, and iniquities therein, resulting from the manner of its procurement, or the fraud of the court, must be alleged and proven with the same strictness that would be required in a bill in equity having for its object the annullment of the final judgment of any court of record of the State, brought about by fraud or collusion. An error of fact, made by the county court in a matter of calculation, computation, or of numbers, or of law, upon the question, such as, who are and who are not "taxable inhabitants" of a designated community, are no more fatal to the integrity, fidelity or conclusiveness of the judgment by that body, ordering the incorporation of the city or town, than would like errors made by any other court of record of the State. These errors are matters of re-

view upon appeal, where an appeal is provided for, but are not such as impeach the integrity of or go to the very life and existence of the judgment itself, as where fraud and collusion in the procurement of its order or judgment is alleged and shown.

In cases of that character a judgment is declared void and of no effect for the reason and upon the theory, that fraud having entered into it, as into any other transactions of life, vitiates its integrity, destroys its validity; because the apparent is not what it appears; because the pretended is not the reality.

Under those facts we would have no legal judgment of incorporation, hence no legal officer of the pretended corporation, and a writ of ouster under the inquiry by *quo warranto* would go against those making the assumption. But quite different is the situation where the attempt is to show that the judgment as entered ought never to have been made; that the corporation ought never to have been created, because the court having before it the facts and law for determination, erroneously construed their force and meaning.

Informants further contend that the order of the county court incorporating the city of Webster Groves is void for the additional reason, that said order incorporated within the limits of said city large tracts of territory not included within the limits of the original unincorporated town of Webster Groves, and because some of said tracts so included contained many acres of land used for pasture and farming purposes. While the testimony shows that the city of Webster Groves as incorporated by the county court did include tracts of land not embraced in the original subdivision of Webster Groves, as evidenced by the recorded plat thereof filed forty odd years ago, it also discloses the fact that all these tracts of land lying adjacent to old Webster Groves, and that were included

within the limits of the city of Webster Groves, as incorporated by the county court, except about 70 acres, had from time to time previous to the date of that order, been subdivided into lots and blocks and platted, or by recorded deeds had been divided into lots of five acres or less, and that the owners of every unplatted tract exceeding five acres in area signed the petition for incorporation; and further that while, upon every lot or block of the different tracts so subdivided and platted, a house had not yet been erected, the manifest purpose of such acts was to dedicate all of such land to urban purposes and await the development of time when such would be its ultimate use. The present temporary use of one or more of these lots or blocks for the pasturing of a cow or horse, or for the growing of vegetables or garden truck thereon, does not give to the lots so used, the character of pastural or agricultural land in the sense that those terms are to be understood in the case of State ex rel. v. McReynolds, 61 Mo. 203, so much relied upon by relator, and much less could those few lots, thus used (and if such was to be their continued and ultimate use), give to the territory incorporated, of which they are but a small fractional part, a character other than urban property. A community is not to be prevented, in an effort to incorporate itself as a city or town, by the mere occurrence that one or two members thereof use their property within the designated district, for what they choose to call farming or pastural purposes, for the same reason that a city duly incorporated would not have its franchises revoked because one or more inhabitants therein should think it proper and profitable to convert his or their residence property into a corn patch or pasture land. It is the general character, fitness, use, and adaptability of the united whole, and not the use for which a small fraction of the designated district may be employed, that must determine what constitutes a city or town,

in contemplation of section 977, Revised Statutes 1889, authorizing any county court to incorporate same, when the conditions precedent and necessary thereto have been complied with.

While it is true that the county courts of our State have no right to incorporate farming or agricultural lands, as such, into cities or towns, as was attempted in the McReynolds case, *supra*, yet lands used for agricultural purposes solely, may become so surrounded and connected with lands used for town and city purposes, as to be and constitute a part thereof, so that the incorporation of the town or city would, as a necessity, include within its natural boundaries such lands, and this court has three times held since the opinion in the McReynolds case, *supra*, that the inclusion of small tracts of agricultural lands within the corporate limits of the unincorporated town would not operate to defeat the corporation thus created.    [State ex rel. v. Campbell, 120 Mo. 396; Burnes v. Edgerton, 143 Mo. 563, and Copeland v. City of St. Joseph, 126 Mo. 417.]

We think that the county court properly determined that the few weeds in an occasional calf lot, and the scattered corn hills of the truck patches here and there found, were inadequate to hide from view the aggregation of houses and improvements embraced within the boundaries of the territory it was called upon to and did incorporate as a city.

It would be impossible to read the testimony in this case and not be impressed with the belief that the ultimate use of every foot of land included within the corporate limits of the city of Webster Groves as incorporated by the county court, would be for city purposes; that its present value is estimated upon its now or its prospective use for such purposes, and not as farming lands.    Its close proximity to the great city of St. Louis; the surrounding suburban neighborhoods in every di-

rection; its railway and street car connections to and with the city of St. Louis; the subdivision into lots, and small tracts and parcels of lands, all impress upon it the character of urban as distinguished from rural or farming property.    Informants' second contention is without foundation.

This brings us to the consideration of informants' last charge, that the ordinance of the so-called city of Webster Groves extending its corporate limits is void for the reason as set out in the information, that it was not approved by a majority of the qualified voters of the so-called city of Webster Groves, and second that it is unreasonable, in that it undertook to and did include large tracts of farming and agricultural lands within its extended limits.   Passing without comment the question whether under our statute authorizing writs of *quo warranto* to issue, it is availing to test the validity of an ordinance passed by a city in the exercise of a rightful power, such as the extending of its corporate limits, we find ourselves confronted with the fact that the writ herein has been directed alone against William S. Fleming as mayor and the other respondents as board of aldermen of the so-called city of Webster Groves, and not against the city itself, as such.   In fact the writ against the city by its corporate name would have defeated the primary object of informants, to have tested the validity of the order of the county court incorporating the city of Webster Groves.

To have made the city a party defendant, as informants by motion sought to have done after the cause upon its merits had been submitted to the court, in order that an inquiry might properly be made into the charge that it had abused its franchise or usurped powers and liberties not lawfully possessed, such as the incorporation of territory over which it had no control, would have been a recognition of the lawful existence of the very corporation which the informants by the pro-

ceeding against the individual respondents sought to impeach the validity of.

The proceedings in this case against the individual respondents and against the city would have been inconsistent. The city not being a party, the question as to the alleged exercise by it of an unlawful power as charged by informants could under no circumstances be here inquired into. When the proceeding is to restrain a corporation from the unlawful exercise of a franchise to it belonging, or to oust a corporation from the exercise of a franchise which it usurps, it must be against the corporation itself, and not against its officers.

For the foregoing reasons the ouster should be denied and the writ dismissed, and it is so ordered.

*Gantt, C. J., Sherwood, Brace, Marshall* and *Valliant, JJ.,* concur; *Burgess, J.,* absent.