# THE STATE ex rel. H. B. SCOTT v. FRED LICHTE et al., Judges of County Court.

### In Banc, March 7, 1910.

1. **INCORPORATON OF TOWN: Including Farming Land.** County courts are not given authority by the statutes to include large bodies of farming lands within the limits of a village where the only apparent purpose of including them is to increase the taxable area; but on the other hand, they are not limited strictly to the platted land and commons, but may include a reasonable quantity of other land when it is so situated that it appears to be designed and adapted to urban purposes and necessary or convenient to the reasonable exercise of the village government; and whether it is so or not, is a question in the first instance for the county court.

2. ————: ————: **Jurisdiction: Two Towns.** Where the petition for the incorporation of a village is in due form and is signed by two-thirds of the taxable inhabitants of the area sought to be embraced within the limits of the proposed corporation, the county court is not deprived of its jurisdiction over the subject-matter by the fact that the petition includes in its purposes two platted towns separated in part by a railroad, and a triangle of forty-five acres of farming land lying between them, and 85 acres adjoining one of them, of which twenty-six acres in a narrow strip lying along the edge of one of them belong to the only objector, and the rest to other parties, one of whom has signed the petition and neither of whom is making any resistance to the incorporation.

3. ————: **Notice to Landowners: Constitutional Statute.** The statute authorizing the county court to incorporate villages without giving notice by publication or otherwise, to parties whose lands are to be embraced within the corporation, is not unconstitutional. The landowners are not thereby deprived of their property without due process of law. The creation of a municipal corporation is an act of State sovereignty, and the grant of a franchise to it, such as a general charter, is an act that belongs primarily to the General Assembly, and as it could create a municipal corporation without giving notice to landowners, the State can likewise do so through any other department of its government to which it may choose by its Constitution to delegate the power.

226 Sup—18

4. **CITIES AND TOWNS: Classification: Villages: Five Classes.**
The Constitution in stating that the number of classes of
"cities and towns" shall not exceed four, did not include, and
has never been understood by the General Assembly to in-
clude, villages as cities. The statutes which divide all "cities"
containing more than 500 inhabitants into four classes, and
provide that all towns having a less number of inhabitants may
be incorporated as villages, did not create five classes of cities
and towns, and are not unconstitutional.

## Prohibition.

WRIT DENIED.

*E. Rosenberger & Son* for relator.

(1) The county court has no jurisdiction under
section 6004, Revised Statutes 1899, to include within
the boundaries of the village of Bellflower, as sought
to be incorporated, large tracts of farm lands which
are used exclusively for agricultural and pastoral pur-
poses. State ex rel. v. McReynolds, 61 Mo. 203; State
ex rel. v. Campbell, 120 Mo. 402; State ex rel. v. Flem-
ming, 185 Mo. 566; State ex rel. v. Jenkens, 25 Mo. App.
484; State ex inf. v. Bellflower, 129 Mo. App. 138;
State ex rel. v. Small, 131 Mo. App. 470; State ex rel.
v. Minnetonka, 57 Minn. 526; Vestal v. Little Rock,
54 Ark. 32; State v. Edison, 76 Tex. 302; Ewing v.
State, 81 Tex. 172; Borough of Little Meadows, 35 Pa.
St. 335.    (2) Under section 6004, Revised Statutes
1899, the county court is without jurisdiction and has
no authority to incorporate within the borders of the
town of Bellflower, and within the territory described
in the petition, a separate and distinct town known,
platted and designated as the town of New Bellflower,
said town of New Bellflower being separate and dis-
tinct from the old town, not adjacent to nor adjoining
the old town; but, on the contrary, separated and
isolated from said old town by a farm owned by relator
and containing forty-five acres.    Borough v. West
Philadelphia, 5 Watts & S. 281.    (3) City limits should
not be extended to take in contiguous lands [1] when
they are used only for the purpose of agriculture and

horticulture and are valuable on account of such uses, or [2] when they are vacant and do not derive special value from their adaptability for city purposes. People v. Bennett, 29 Mich. 451; Morford v. Unger, 8 Ia. 82; New Orleans v. Michoud, 10 La. Ann. 763; Bradshaw v. Omaha, 1 Neb. 16. (4) Sections 5256 and 6004, Revised Statutes 1899, are unconstitutional in this, to-wit: Article 9, section 7, of the Constitution provides that the General Assembly shall provide by general laws for the organization and classification of cities and towns, and that the number of such classes shall not exceed four. By section 5256, Revised Statutes 1899, it is provided that all towns not now incorporated in this State, containing less than five hundred inhabitants, are hereby declared to be villages. Sections 5252, 5253, 5254 and 5255, divide cities into four different classes, to-wit, first, second, third and fourth class respectively. Section 5256, Revised Statutes 1899, creates a fifth class known as villages. Section 6004, Revised Statutes 1899, provides for the organization of villages as bodies politic, and hence sections 5252 and 6004 are unconstitutional and absolutely null and void, because under article 9 and section 7 of the Constitution, the General Assembly has authority to provide by general laws for the organization and classification of cities and towns, but has no authority to create a greater number of such classes than four, and the General Assembly having attempted to create a fifth class of cities and towns has exceeded its constitutional limits; consequently the county court of Montgomery county has no authority or warrant of law to create as a body politic the town of Bellflower. (5) Section 6004 is unconstitutional in that it is in violation of the Fifth amendment of the Constitution of the United States, and is in violation of article 2, section 30, of the Constitution of the State, which provides that no person shall be deprived of his property without due process of law (said section does de-

prive this relator of his property without due process of law), and, furthermore, in that it fails to provide that any notice shall be given of the presentation of a petition for incorporation, and fails to provide for any hearing, remonstrance or defense before the county court, and fails to provide any adequate remedy whereby one's property rights may be protected in the premises, and subjects property to city taxes after incorporation without giving the person affected thereby an opportunity to be heard in court. People v. Bennett, 29 Mich. 451; Trust Co. v. Railroad, 195 Mo. 669; State ex rel. v. Maroney, 191 Mo. 531; State ex rel. v. Spencer, 114 Mo. 574; St. Louis v. Hill, 116 Mo. 527. Section 2, article 10, of the State Constitution provides that the courts of justice shall be open to every person and certain remedies afforded for every injury to property, yet section 6004 fails to provide any remedy for the injury to the property of this relator, and subjects his property to city taxes against his protest, and without giving him an opportunity to be heard in court to make defense.

*Avery, Young & Woolfolk, W. B. M. Cook* and *R. H. Norton* for respondents.

(1) The law of the State vests the county court with authority to incorporate the inhabitants of the village of Bellflower living within the territory described in their petition, and this is done especially by section 6004, which has been substantially the same since the year 1835. R. S. 1835, p. 600, sec. 1. This statute is coeval with the Constitution of 1820 and has remained without material amendment unto this day. The court having jurisdiction of this class of cases, there is no ground for the issuance of a writ of prohibition, since there is other adequate remedy by *certiorari* or *quo warranto*. State ex rel. v. Fox, 85 Mo. 61; State ex rel. v. Elkin, 130 Mo. 90; Mastin v. Sloan, 98 Mo. 252; State ex rel. v. Stobie, 194 Mo.

46; Delaney v. Police Court, 167 Mo. 679; State ex rel. v. Reynolds, 121 Mo. App. 707; State ex rel. v. Mason, 155 Mo. 486; State ex rel. v. Ross, 136 Mo. 273; Coleman v. Dalton, 71 Mo. App. 19; Bankers Life Assn. v. Shelton, 84 Mo. App. 634. The county court certainly did nothing in excess of its jurisdiction in this cause, if it had any jurisdiction at all, for the reason that the court had done nothing in said cause except to fix the day for its hearing and determination, when relator interposed his complaint and prayer for the issuance of the writ herein. Relator did not even tender or interpose the issue of jurisdiction to the respondents, the county court, as in this case it was clearly his duty to do before being entitled to resort to this extraordinary remedy. State ex rel. v. Laughlin, 9 Mo. App. 486; Barens v. Gottschalk, 3 Mo. App. 111; State ex rel. v. Eby, 170 Mo. 497; State ex rel. v. Aloe, 152 Mo. 466; High, Extraordinary Rem., sec. 773. In the light of the above authorities we submit that the writ should be denied. (2) There is not, nor has there ever been, any definite or exact rule of restriction as to the amount of agricultural or pastoral lands that may be embraced or included within the limit of an incorporated town under section 6004, except the qualification made by the statute that the quantity of such lands must be reasonable, and, further, may be sufficient to make even and regular the boundaries of such incorporated town. If there is any other restriction as to the quantity of unplatted territory that may be included, we have been unable to find it in the statutes or in the adjudicated cases, provided, of course, that there is no palpable abuse of the right by undertaking to incorporate a large acreage of farming land, an abuse that has been repeatedly condemned by the courts. Relator refers to 130 acres of farming or agricultural lands being included within the territory sought to be incorporated as the town of Bellflower, but fails to say that forty-five acres of this 130 acres

is the wedge-shaped tract of land hereinbefore re-
ferred to as being located between the original town
of Bellflower and relator's addition which he has chris-
tened "New Bellflower" and which the St. Louis Court
of Appeals has declared (so that it is now the law of
the case), must be taken as a part of the incorporated
district as a matter of necessity on account of its pecu-
liar location with reference to the said town of Bell-
flower and its additions, including "New Bellflower."
State ex inf. v. Bellflower, 129 Mo. App. 133. All of
the 130 acres referred to by relator is used for town or
urban purposes except the wedge-shaped tract of land
located between the old town of Bellflower and the new
town of Bellflower, which the relator, Col. Scott, plants
to corn of the tallest growing variety so that it may
isolate the original town of Bellflower from his addi-
tion called "New Bellflower," and which he insists is
a cornfield used strictly for farming purposes. State
ex rel. v. Campbell, 120 Mo. 396; Burns v. Edgerton,
143 Mo. 563; Copeland v. St. Joseph, 126 Mo. 417; 28
Cyc. Law and Proc., p. 282, A. and B. On this liberal
construction we do not think the wedge-shaped piece
of land separating the two towns ought or could defeat
their incorporation as one town. The necessity of tak-
ing it into the corporation is apparent, and the fact
that it is used for farm land ought not to defeat the
right of the two towns to incorporate as one. Gibony
v. City of Girardeau, 58 Mo. 141; State ex rel. v. Small,
131 Mo. App. 478; Walden v. Dudley, 49 Mo. 419.
(3) The territory and population here sought to be
incorporated is not a city of the first, second, third
or fourth class, under the laws of the State, but is a
village. The town of Bellflower is one compact com-
munity of houses forming a nucleus from which a city
of the fourth class is destined to spring within a very
few years. The authorities hold that when a number
of distinct villages have coalesced by the growth of
population, they may be incorporated as a borough

although the different parts which have grown into one community may continue to be known locally by their original designations. 28 Cyc. Law and Proc., p. 145, par. 8; State ex rel. v. Campbell, 120 Mo. 396; In re Eddystone, 3 Del. Co. (Pa.) 541; 19 Pa. Super. T. 178; In re Narberth Borough, 16 Pa. Co. Ct. 32; 28 Cyc. Law and Proc., p. 149, par. 12; St. Louis v. Allen, 13 Mo. 400; St. Louis v. Russell, 9 Mo. 507; Crook v. People, 106 Ill. 237; State v. Tipton, 109 Ind. 73; Lancaster Co. v. Rush, 35 Neb. 119. In the absence of any constitutional inhibition the Legislature of the State has full power, in its discretion, to provide what territory may be incorporated within the corporate limits of a municipality, and may enact any law respecting same which is not an abuse of the legislative discretion, as when a territory is included within a municipal corporation or is annexed to a municipal corporation for the mere purpose of increasing municipal revenue, the property annexed deriving no benefit from the incorporation. Fulton v. Davenport, 17 Ia. 404; Cheaney v. Hooser, 9 B. Mon. (Ky.) 330; 20 Am. & Eng. Ency. Law, p. 1152, par. 8. The Constitution places no legislative restriction upon the Legislature. In the matter of the creation of municipal corporations the Legislature is left free to legislate upon this subject, both as concerning cities of the first, second, third and fourth classes and also villages. McClay v. Lincoln, 32 Neb. 412; State v. Baird, 79 Tex. 63; People v. Flanning, 10 Col. 553; People v. Harvey, 142 Ill. 573; 28 Cyc. Law & Proc., p. 150, par. 12, subdiv. D, e. c.

(4) Sections 5256 and 6004 are not in contravention of section 7, article 9, of the Constitution, providing for the classification of cities and towns. The framers of the Constitution certainly did not intend to restrict or abridge the rights of the people of the State through their legislative body to incorporate the many towns containing less than five hundred inhabitants.

VALLIANT, C. J.—This is an application for a writ of prohibition to go against respondents, composing the county court of Montgomery county, to prohibit them entertaining jurisdiction of a petition filed in that court, founded on section 6004, Revised Statutes 1899, praying for the incorporation of a village to be called the town of Bellflower. The petition was signed by two-thirds of the taxable inhabitants of the area sought to be embraced within the limits of the proposed corporation and was in due form; it embraced 460 acres of land; it was filed in the county court May 8, 1908, while the court was in session, whereupon the court made an order continuing the matter until May 13th; on May 12th relator filed his petition in this court praying a writ of prohibition; this court on that day issued a preliminary rule to the justices of the county court to show cause why the writ should not issue as prayed. On October 13th, respondents filed a motion to quash the application and dismiss this suit. The court ordered that the motion be retained to be considered on the final submission of the cause on its merits, whereupon respondents filed their return, and the court appointed David H. Harris, Esquire, a commissioner to take proof on the disputed facts. The commissioner has made his report, relator has filed exceptions to same, and the cause is now before us for final disposal on the questions of law and facts.

The relator relies on three propositions to sustain his application for a writ of prohibition: first, that the area embraced in the proposed incorporation includes two separate towns and, of the 460 acres so embraced, 130 acres are lands unplatted and used only for agricultural and pastoral purposes; second, section 6004 is unconstitutional in this, that it makes no provision for notice of the proceeding in the county court and thereby deprives relator of his property without due process of law; third, that section 6004, in connec-

tion with sections 5252 to 5256 inclusive, is unconstitutional in the face of section 7, article 9, of the Constitution, which requires the General Assembly to enact general laws for the organization and classification of cities and towns and limits the classes to four, that having by sections 5252 to 5255 created four classes of cities it could not create a fifth class by calling it a village.

I. The facts on which relator's first proposition is based are as follows:

For some years prior to the beginning of this controversy there existed the unincorporated platted town of Bellflower, containing originally eighty acres, but afterwards by additions made from time to time so extended as to cover 240 acres. Relator bought a tract of 190 acres lying adjacent to and south of the town. After the relator's purchase, the C., B. & Q. railroad was constructed, running diagonally through relator's land from southeast to northwest, and through a small part of the southwest corner of the town. The location of the railroad left a tract of about forty-five acres of relator's land in the shape of a triangle north of the track and adjoining the south line of the town. The relator then laid off and platted a town on his own land south of the railroad and called it New Bellflower. His new town was separated from what he calls the old town by this forty-five-acre triangle, and he has since used that triangle solely for a cornfield.

The following diagram, though not mathematically accurate, will assist in understanding the situation. A very much more accurate map is on file in the case showing the plats of the two towns laid off in lots, streets, alleys, etc., to which reference may be had if desired:

The petition on file in the county court asks that all the land shown on the above diagram, including the two platted towns, the forty-five-acre triangle and eighty-five acres embraced in the dotted lines, aggregating in all about 460 acres, be included in the corporation. Of the eighty-five acres embraced in the dotted lines twenty-six acres in a narrow strip south of the new town belong to relator, the rest to other parties, one of whom is one of the petitioners for the incorporation and neither of whom is making any resistance to the act of incorporation.

The statute under which the parties seeking the incorporation are proceeding is section 6004, Revised Statutes 1899, of which the following is the part of vital interest in this case:

"Whenever two-thirds of the taxable inhabitants of any town or village within this State shall present a petition to the county court of the county, setting forth the metes and bounds of their village and commons, and praying that they may be incorporated under a police established for their local government, and for the preservation and regulation of any commons appertaining to such town or village, and the court shall be satisfied that two-thirds of the taxable inhabitants of such town or village have signed such petition, and that the prayer of such petition is reasonable, the county court may declare such town or village incorporated, designating in such order the metes and bounds thereof, and thenceforth the inhabitants within such bounds shall be a body politic and corporate, by the name and style of 'The town of ————,' naming it," etc.

Relator interprets that statute to mean that the county court has no jurisdiction to entertain a petion for incorporation that seeks to include in the corporation area any more than "the metes and bounds of their village and commons," therefore it cannot entertain this petition, which seeks to include the new town, which is no part of the original village, the forty-five-acre triangle and the eighty-five acres outlying which are no part of the village commons. In support of that interpretation of the statute relator relies on the law as declared by this court in State ex rel. v. McReynolds, 61 Mo. 203. The language used by the court in that case gives strong support to the relator's contention here, but that language must be understood as applied to the facts of that case. That was a proceeding by *quo warranto* tried in the circuit court and brought to this court by appeal, the record

showing all the facts of the case. In that case the
county court of Bates county had undertaken to in-
corporate a village under the name of the town of
Butler and included in the area designated for the
village about 1200 acres, of which only about 260 or
280 acres were included in the town as it had previously
been platted, the rest was farming land surrounding
the town with nothing to indicate that it was designed
or intended ever to be used as urban property. The
court defined the word ''commons'' as used in the stat-
ute to mean ''lands included in or belonging to a town
set apart for public use,'' and after quoting from the
statute said: ''It would seem from the foregoing por-
tion of the statute that power is only given to the coun-
ty courts to incorporate towns and villages and their
commons; that no power is conferred on county courts
to incorporate a farming country not constituting a
part of the town or village or the commons belonging
thereto.'' That language expresses the law correctly as
applicable to the facts of that case, but it is not to be so
applied in other cases as to forbid the county court
including any land at all except that contained in the
platted towns and its commons.

A previous effort to incorporate this village found
its way into our St. Louis Court of Appeals, where it
passed under judgment in the case of State ex rel. Ros-
enberger v. Bellflower, 129 Mo. App. 138. In that
case the petition for incorporation sought to compass
not only the old and new town and the forty-five-acre
triangle as in this case, but also over 600 acres of out-
lying farm land. The court in rendering its decision
referred to and quoted from the McReynolds case, and
other more recent decisions of this court, the latest
being State ex rel. v. Fleming, 158 Mo. 558, wherein
it was said: ''While it is true that the county courts
of our State have no right to incorporate farming or
agricultural lands, as such, into cities or towns, as was
attempted in the McReynolds case, supra, yet lands

used for agricultural purposes solely, may become so
surrounded and connected with lands used for town
and city purposes, as to be and constitute a part there-
of, so that the incorporation of the town or city would,
as a necessity, include within its natural boundaries
such lands, and this court has three times held since
the opinion in the McReynolds case, supra, that the
inclusion of small tracts of agricultural lands within
the corporate limits of the unincorporated town would
not operate to defeat the corporation thus created.
[State ex rel. v. Campbell, 120 Mo. 396; Burns v. Ed-
gerton, 143 Mo. 563, and Copeland v. St. Joseph, 126
Mo. 417.]'' Then the Court of Appeals said: ''On
this liberal construction we do not think the wedge-
shaped piece of land separating the two towns ought
or can defeat their incorporation as one town. The
necessity of taking it into the corporation is appar-
ent, and the fact that it is used for farm lands ought
not to defeat the right of the two towns to incorporate
as one. But it seems to us that under the authority of
the McReynolds case the county court exceeded its ju-
risdiction by including within the boundaries of the
town over six hundred acres of outlying farm land.''
That was also a *quo warranto* case tried in the circuit
court and carried to the Court of Appeals by appeal,
where the judgment was reversed and the cause re-
manded. After that cause was returned to the circuit
court the suit was dismissed and the petition we are
now considering was filed in the county court, differ-
ing from the petition in the former suit only in that
it now covers only eighty-five acres of outlying land
instead of over 600.

The law is correctly stated in the cases above re-
ferred to. The county courts are not given authority
to include large bodies of farming lands in a village
limits where the only apparent purpose of including
them is to increase the taxable area, but on the other
hand they are not limited strictly to the platted land

and commons, but may include a reasonable quantity of other land when it is so situated as appears to be designed and adapted to urban purposes and necessary or convenient to a reasonable exercise of the village government. Whether it is so or not is a question in the first instance for the county court. It is contended by the respondents in this case that these outlying lands are of the character and location that would bring them within the description above mentioned and there is evidence taken before the commissioner that tends to so prove, but we are not going to decide that issue of fact, because this, differing from the cases above referred to, is an application for a writ of prohibition and we are concerned only with the question of county court's jurisdiction. If that court has jurisdiction of the case before it, the question of whether the alleged farming lands included in the petition for incorporation fill the description above mentioned of such lands as may be so included, is a question for that court in the first instance to decide, if it decides the question in the affirmative it will, if all else is right, grant the prayer for incorporation, otherwise it will deny the petition. We hold that the county court is not deprived of its jurisdiction given under section 6004, Revised Statutes 1899, by the fact that the petition includes in its purpose the two towns, the forty-five-acre triangle, and the outlying eighty-five acres.

II. Relator contends that section 6004, Revised Statutes 1899, is void because it attempts to authorize the county courts to incorporate villages without giving notice to the parties whose lands are to be included in the corporation, thereby depriving them of their property without due process of law.

Relator misconceives the purpose of the statute and the purpose of the petition under it in the county court. He is not in any event to be deprived of his property, he is only liable, if the petition should be

granted, to have an additional arm of State governmental protection extended over his property and a tax levied to pay the expense. The State is not required to give notice when it purposes to take action for the better government of its people or when it will levy taxes. The creation of a municipal corporation is an act of State sovereignty, the corporation is created to aid the State in the exercise of its sovereign power, to preserve the lives, the health, the liberty of its people and the protection of their property—it is an arm of the State. Formerly cities, towns and villages were incorporated only by special acts of the Legislature, and when so the Legislature never waited to notify the owners of the land that it was intending to create a municipal corporation that would include their lands or asked if they had anything to say why it should not be done. No one ever questioned the power of the State to so act without previous notice to the landowners. But in modern times, because the legislative department of the State government has not time to spend in making a special charter for every community that feels the need of a municipal government, and also for the sake of uniformity in such charters, it has with sanction of the Constitution passed general laws delegating that governmental power to the courts and directing how it shall be exercised. We do not mean to say that the county court in exercising such power is as free from supervision and control of higher courts as the General Assembly would be if it acted in the same matter, but what we do mean to say is that the power to incorporate when exercised by the county court is a power of the same nature as that which the General Assembly would have exercised if it yet retained the exercise of that authority. The grant of a franchise, whether to constitute a public or a private corporation, is an act of sovereignty that belongs primarily to the law-making department, and though transferred by the General Assembly to the

judicial department by authority of the Constitution, yet it is not a judicial act, though when exercising it the court doubtless must act according to its own course of procedure as far as applicable. Section 7, article 9, of the Constitution says: "The General Assembly shall provide, by general laws, for the organization and classification of cities and towns." Since the State, acting through its legislative department, could create a municipal corporation without giving notice to the owners of the property without violation of section 30, article 2, of the Constitution, which says "that no person shall be deprived of life, liberty or property without due process of law," the State can likewise do so through any other department of its government to which it may choose by its Constitution to delegate the power. When the General Assembly conferred this power on the county courts it had authority to prescribe the course to be pursued and if it had required notice by publication or otherwise the county court would have to comply with such requirement, but it has not so required and it was not required so to do.

III. Relator's third point is that section 6004, when considered in the light of sections 5252 to 5256, violates the provision of section 7, article 9, of the Constitution, which forbids the creation of more than four classes of cities and towns. That section of the Constitution is as follows:

"The General Assembly shall provide, by general laws, for the organization and classification of cities and towns. The number of such classes shall not exceed four; and the power of each class shall be defined by general laws, so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions. The General Assembly shall also make provisions, by general law, whereby any city, town or village, existing by virtue of any special or local law, may elect to become sub-

ject to, and be governed by, the general laws relating to such corporations."

In obedience to that constitutional mandate the General Assembly in 1877 enacted what are now sections 5252 to 5255, Revised Statutes 1899, inclusive, dividing all "cities and towns" into classes. Cities and towns having 100,000 inhabitants or more are "cities of the first class," containing 30,000 and less than 100,-000 "are cities of the second class," containing 3000 and less than 30,000 are "cities of the third class," containing 500 and less than 3000 are "cities of the fourth class." Those sections, when describing the municipalities by the number of inhabitants, use the words "cities and towns," as used in the Constitution, but when classifying them they use the word "cities" only, designating them not as "cities and towns" of the first, second, third or fourth class, but "cities" of the first, second, third or fourth class. This classification left out of view unincorporated towns or villages containing less than 500 inhabitants, but in 1879 the General Assembly enacted what is now section 5256, Revised Statutes 1899: "All towns not now incorporated in this State, containing less than 500 inhabitants, are hereby declared to be villages." The effect of that section is a mere definition, the statute authorizing the incorporation of such villages was already a law and had been in force since 1837 and is substantially the same as section 6004 we are now discussing; the jurisdiction of the county court to entertain the petition now before it is not derived from section 5256 defining the word village, but from section 6004 which would have been as effectual for the purpose of incorporating a village if section 5256 had never been enacted.

Relator's proposition is that the Constitution having said that the General Assembly should not create more than four classes of cities and towns, it could

not create a fifth class of towns by calling them villages. To give that interpretation to the section of the Constitution above quoted we would have to say that the framers of the Constitution intended that the term "cities and towns" should embrace not only the larger urban communities but the smallest also, or else they intended to ignore or exclude from organization the small communities called villages. That section itself, however, expressly recognizes that there were then existing under special charters not only cities and towns but villages also, *eo nomine.* The statute under which the petition in the county court in this case is framed has been the law of this State from its earliest organization. The express purpose of the statute is the incorporation of villages as distinguished from larger urban communities.

The distinction between villages and larger towns was not only well known to the framers of the Constitution of 1875, and to the inhabitants generally of this State, but provision for their incorporation and government is found in our earliest statutes. That well-known distinction is shown by the fact that the first General Assembly which convened after the adoption of the Constitution of 1875, re-enacted, with slight amendment, the statute providing for the incorporation of villages as it had then existed since 1837 and as it has come down to us in its present form; from that date to this that statute has remained on our books and its validity has never before been questioned, so far as our reported cases show. Even if we were more impressed than we are with the soundness of the argument of relator we would hesitate to declare an Act of the General Assembly invalid that had so long stood unchallenged and on which doubtless many rights now depend.

There is nothing technical or obscure in the meaning of the words city, town and village. The word town is more comprehensive than either of the others,

it is a generic word applicable as well to a city as to a village. In England a city was distinguished from other towns by the fact that it had a cathedral and was the residence of a bishop, but in this country the name city is used ordinarily to designate the larger class of towns. The name village always carries to the mind the idea of a small urban community. A city is a town and a village is a town, but the word city or village indicates the size of the town. London, New York and St. Louis are towns and Bellflower is also a town, but in applying the word city or village to either of those communities no one would be in doubt as to the correct application. Sometimes perhaps ambitious founders of towns misapply the word city to what should be called a village, but no one is deceived thereby; we speak now of the ordinary and commonly accepted meaning of the words. We find in the section of the Constitution we are now considering (Sec. 7, art. 9) the term "cities and towns," and also the term "town or village;" our General Assembly in 1877, when it came to performing the duty required by that section, interpreted the term "cities and towns" as there used to mean cities, and the term "town or village," as therein later used, to mean village, and so it has been by that department of the State government understood ever since, and we think the General Assembly was correct in its interpretation.

The writ of prohibition is denied. All concur.