STATE ex rel. CATHERINE COYNE et al., Relators, v. WILLIAM BUERMAN et al., Judges, Respondents.

St. Louis Court of Appeals. Submitted November 17, 1914. Opinion Filed January 5, 1915.

1. **MUNICIPAL CORPORATIONS:** Proceedings for Incorporation: Validity of Petition: "Taxable Inhabitants." Under Sec. 8529, R. S. 1909, providing that, whenever a majority of the "inhabitants" of any unincorporated city or town shall present a petition to the county court, setting forth the metes and bounds of their city or town and commons, and praying that they may be incorporated and a police established for their local government and for the preservation and regulation of any commons pertaining to such city or town, if the court shall be satisfied that a majority of the "taxable inhabitants" of such town have signed such petition, it shall declare such city or town incorporated, a petition signed by a majority of the *taxable* inhabitants is sufficient.

2. ———: ———: ———: **Failure to Describe Commons.** A petition for the incorporation of a city, under Sec. 8529, R. S. 1909, which alleged that there were no commons was not defective because of the failure to describe any commons and to pray for the incorporation of the city for the preservation and regulation of such commons.

3. ———: ———: **Including Farm Lands.** While county courts have no right to incorporate farming or agricultural lands, as such, into cities or towns, yet lands used for agricultural purposes solely may become so surrounded and connected with lands used for town and city purposes as to constitute a part thereof, and in such case they may be included within the corporate limits.

4. **PROHIBITION: Municipal Corporations: Proceedings for Incorporation: Prohibition Against County Court.** That agricultural lands were included within the boundaries of a proposed city, where this did not appear on the face of the petition for incorporation filed in the county court, that the petition was not signed by the requisite number of taxable inhabitants, that the county court was about to proceed to have testimony taken out of court, in the absence of the parties and in an irregular manner, for the purpose of determining whether the parties whose names appeared on the petition had in fact signed it, or that a fraud was about to be perpetrated, would not justify prohibition to prevent action by the county court, as prohibition lies only when there is a lack of jurisdiction or where there are acts in excess of jurisdiction, and all of these matters were within the jurisdiction of the county court and to be determined by it in the first instance, though its judgment, when made, might be void and open to attack by *quo warranto.*

5. ———: ———: ———: ———. That the proposed incorporation of a city might lead to further litigation, or to unsettled conditions, though regrettable, afforded no legal ground for restraining the incorporation by prohibition, especially as to halt threatened litigation is the office of the writ of injunction, and not of prohibition.

Prohibition. Original Proceeding.

WRIT QUASHED.

*Randolph Laughlin* for relators.

No brief filed for respondents.

REYNOLDS, P. J.—This is an application for a writ of prohibition against the judges of the county court of St. Louis county to prohibit them from proceeding with the consideration of a petition for the incorporation of the city of Uniondale in St. Louis county.

It is averred in the petition for the writ, that the county court is exceeding its authority and jurisdiction in entertaining the proceedings, and in further proceeding therewith, and in that it contemplates taking further judicial action beyond the scope of its jurisdiction, while claiming to be proceeding under and by virtue of section 8529, Revised Statutes 1909. It is averred that among the reasons why respondents have no authority or jurisdiction to entertain the petition, and no authority or jurisdiction to declare the territory therein described an incorporated city, are:

(a) Because the petition was not presented to the county court by a majority of the inhabitants, as required by law, and does not purport to have been so presented, but does purport to have been presented by a majority of the taxable inhabitants; it being averred as a matter of fact that the territory described in the petition contains 1150 inhabitants, 558 of whom would be necessary to constitute a majority, and the petition does not purport to have been presented by more than 302 taxable inhabitants.

(b) Because the petition does not purport to be a petition of the inhabitants of any city or town of the State not incorporated but purports to be a petition of certain inhabitants of the territory in the petition described.

(c) Because the territory described is not in point of fact an unincorporated city or town but is composed of three different classes of property, to-wit: (1) The small residence settlement of Home Heights. (2) Agricultural lands outside of and beyond the limits

of Home Heights. (3) Integral parts and portions of the unincorporated town of Overland.

The petition then alleges facts which are relied upon as showing the inexpediency of the incorporation of the proposed limits.

It is further alleged that the petition is fatally defective and insufficient for the reason that it does not pray "for the preservation and regulation of any commons appertaining to such city or town," it being claimed that that averment is jurisdictional. A further reason alleged is that the petition presented to the county court is not for the incorporation of territory but of the petitioners. Another reason assigned is that. the petition presented to the county court is defective, in that it appears upon the face thereof that it is not signed by a majority of the taxable inhabitants and is not presented by a majority of all the inhabitants. Still another reason alleged against the petition is, that the order which on its part the county court proposes to make would be unreasonable, in that the effect of the order would be to compel eighty-one families to pay for the building of a school house in Home Heights to which they have no access; will have the effect of depriving eighty-one families of access to a certain school house which they now use; will defeat the incorporation of Overland, another town proposed to be incorporated and composed of part of the same territory.

As another reason it is urged that the incorporation of the proposed town would establish a precedent whereby the provisions of section 8529, Revised Statutes 1909, can be disregarded and a small residence community be. permitted to appropriate to its own use large sections of agricultural territory with which it is in nowise connected and also reach over and appropriate large sections of an unincorporated city: or town.

A final ground assigned as to why prohibition is asked and should be granted is that for the county court to proceed in the matter of incorporation and order incorporation, would produce litigation by farmers who will resist incorporation, and by families who will be driven from one school district to another, all of which, it is averred, considering the uncertainty of its outcome, "will stagnate the district, strangle development, and greatly delay improvements which are now imperatively needed by the entire community." These averments, it is set out, are made in support of the contention that the respondents have no jurisdiction whatever to enter the order for the incorporation of Uniondale which they propose to enter.

The following allegations, it is averred, have to do with the charge that the respondents are exercising an excess of jurisdiction, even assuming that they have jurisdiction to enter the order, namely: That the respondents are, and at all times hereinafter mentioned were, and ever since the filing of the petition for the incorporation of Uniondale have been, engaged in the improper and unlawful practice of taking testimony out of court, and in the absence of the parties in interest, for the purpose of satisfying themselves whether or not the persons whose signatures are now attached to the petition for the incorporation of Uniondale did sign the original petition to incorporate the city of Uniondale, and that a large number of persons (including petitioners) have filed remonstrances with the respondents, wherein they allege that the signatures attached to the petition for the incorporation of Uniondale were not signed to the original petition at all, but were signed, in many cases, to petitions for an improvement in school facilities, and in other cases to blank pieces of paper which it was represented to them were intended to be attached to petitions for increased school facilities, and in other cases to petitions for an election to vote on bond issues for increasing school facili-

ties; that in avowed pursuit of an effort to satisfy themselves whether a majority of the taxable inhabitants of the territory described in the petition for the incorporation of Uniondale had signed such petition, the defendants had printed slips of paper to the effect that the signers certify, in the presence of two witnesses by signing his name thereto, that he did sign the original petition to incorporate the city of Uniondale; that the respondents have selected witnesses of their own, each to go forth and cause these slips to be signed by the persons whose signatures are attached to the petition for the incorporation of Uniondale; that they purpose and intend to receive said slips as competent, relevant and sufficient evidence to meet the requirements of section 8529, and that relators, petitioners here, have been permitted to have no voice whatever either in the selection of the witnesses or their method of procedure or in the manner in which they shall persuade the persons, whose signatures they propose and intend to get, whether that thing which said persons did in fact sign was or was not the original petition to incorporate the city of Uniondale; that the petitioners have objected to this method of procedure, have asked the respondents to desist therefrom, and have reasoned with them that this method of procedure was and is extrajudicial, and that the evidence to be procured thereby would and will be wholly incompetent and worthless, nevertheless the respondents proceed in their determination to be satisfied or not to be satisfied, according to what such secrets *ex parte,* hearsay and incompetent evidence shall disclose.

Filing with their petition the certified copy of the proceedings, including what is claimed to be the original petition for the incorporation of Uniondale, relators pray for an order perpetually prohibiting the county court of St. Louis county from proceeding in the matter of the hearing and determination of the petition for the incorporation of that city.

The return of the respondents, after setting up that they are the duly elected and qualified judges of the county court of St. Louis county, avers that on August 17, 1914, a petition for the incorporation of Uniondale in that county was filed with the county court; that on the 28th of August, the petition was read in open court and a public hearing set by the court for the 14th of September, and notice of this hearing advertised by insertions in two newspapers published in the city of Clayton in the county; that on the 14th of September the hearing was continued by the county court to the 28th of September and that prior to the opening of the county court on that date, the judges of the county court were served with the alternative order of prohibition in the case. Denying all knowledge or information as to the other matters averred in the petition, the respondents aver that they neither admit nor deny the truth thereof. The return further challenges the petition in that it does not state facts sufficient to authorize the issuance of a writ of prohibition. Along with this return the respondent filed a certified copy of what they allege to be the petition for the incorporation of Uniondale, and which it is admitted by relators' counsel is in all respects like the certified copy filed with the original petition, with three exceptions: First, whereas the copy filed with the petition for the writ contained no signatures of the petitioners whatever, that filed with the return contained 302 signatures; second, whereas the copy filed with the petition was certified as of date August 17th, the copy filed with the return was certified as of date October 16th, and third, whereas the copy filed with the petition was certified to by the county clerk, the copy filed with the return was certified by the deputy.

The cause, on being called for hearing on the return day, was submitted by counsel on the above petition and return and exhibits, counsel being granted

time in which to file briefs. Delay in filing these is the cause of our delay in disposing of the case.

On consideration of the case we have concluded that prohibition will not here lie. This for several reasons.

The petition for the incorporation of the city of Uniondale as a city of the fourth class purports to be signed by a majority of the "taxable inhabitants" of the territory, using the words "taxable inhabitants," instead of the more general term "inhabitants." It is true that section 8529 of the statutes, provides that "whenever a majority of the inhabitants . . . shall present a petition," etc., but it concludes, "and if the court shall be satisfied that a majority of the taxable inhabitants of such town have signed such petition, the court shall declare such city or town incorporated." Taxable inhabitants would seem to be the more reasonable interpretation, for it can hardly be intended that children, minors, are to be counted, although they are inhabitants. That taxable inhabitants is meant is clearly decided by our Supreme Court in State ex inf. Attorney-General v. Woods, 233 Mo. 357, 135 S. W. 932, where at page 376, Judge LAMM says that the county court may grant incorporation on "first being satisfied that the majority of the taxable inhabitants have signed the petition." So it is held in State ex rel. Attorney-General v. Fleming, 158 Mo. 558, l. c. 562; 59 S. W. 118.

Passing this recital in the petition for the incorporation of the proposed city, the petition sets out that the territory proposed to be incorporated is composed of subdivided property and is suitable and is used only for residence purposes; that the territory contains more than 500 and less than 3000 inhabitants; that it is not adjacent to or within two miles of the limits of any second or third class city in St. Louis county. The metes and bounds of the proposed city are then given; so is the proposed name, and it is further stated:

"There are no commons located within the proposed city and there are no commons in any way belonging thereto." The prayer is that the petitioners may be "incorporated as a fourth-class city and a police estab- lished for their local government under the name of Uniondale in St. Louis county, Missouri, according to the metes and bounds hereinbefore set forth." Fol- lowing this are the signatures.

In the Woods case, supra, the petition was held defective, in that it did not contain what was there held to be a necessary, a jurisdictional, averment, that is, that the inhabitants were to be incorporated "for the preservation and regulation of any commons per- taining to said city or town," and it was solely for the lack of this averment that our Supreme Court held in that case that there was lack of jurisdiction in the county court. It is distinctly said in the Woods case, supra (l. c. 377): "We are not saying that a petition need set forth the metes and bounds (or pray for the preservation and regulation) of commons if there are no commons. That would be absurd and courts are not allowed to unnecessarily put absurd constructions on statutes. We are saying that the statute means that where there are commons—any such parks, public pleas- ure grounds or other public grounds, as come fairly within the designation of commons—they should be set forth by metes and bounds in the petition and the prayer should refer to them in apt and statutory way, and that where there are no commons that fact should be alleged as an excuse for the absence of a description by metes and bounds, and such prayer," etc. That dis- poses of the point that the petition for incorporation presented to the county court was fatally defective in that it did not describe any commons, for it is set out in the petition for incorporation that "there are no com- mons in any way belonging thereto."

Turning to the other averments of the petition for the incorporation, we find that they exactly conform

to the requirements of the statute as that statute is interpreted by our Supreme Court in the Woods case, supra (1. c. 376), where it is said: "When that kind of a petition is presented, . . . the court has power to act in creating a new governmental agency, incorporating a town. It, first being 'satisfied that a majority of the taxable inhabitants have signed the petition,' goes on to give judgment." Having jurisdiction, prohibition will not lie, unless other averments disclose its lack. Let us examine these.

It is averred in the petition for the writ of prohibition that the boundaries of the proposed city include agricultural lands and it being averred that farm lands cannot be included within the limits of a city, it is contended that the county court has no power to grant incorporation. There are several answers to this.

In the first place it is said by our Supreme Court in State ex rel. Scott v. Lichte, 226 Mo. 273, 1. c. 284, 126 S. W. 466, quoting from State ex inf. Attorney-General v. Fleming, 158 Mo. 558, 1. c. 566, 59 S. W. 118: "While it is true that the county courts of our State have no right to incorporate farming or agricultural lands, as such, into cities or towns, as was attempted in the McReynolds case (61 Mo. 203), yet lands used for agricultural purposes solely, may become so surrounded and connected with lands used for town and city purposes, as to be and constitute a part thereof, so that the incorporation of the town or city would, as a necessity, include within its natural boundaries such lands, and this court has three times held since the opinion of the McReynolds case, supra, that the inclusion of small tracts of agricultural lands within the corporate limits of the unincorporated town would not operate to defeat the corporation thus created."

In State ex inf. Rosenberger v. Town of Bellflower, 129 Mo. App. 138, 108 S. W. 117, our court held that the county court, in incorporating a townsite, may take in tracts of land used exclusively for agricultural pur-

poses, where it is necessary to do so. This is expressly approved by the Supreme Court in State ex rel. Scott v. Lichte, supra, l. c. 285.

That agricultural lands are included within the boundaries of the proposed city does not appear on the face of this petition for incorporation. To the contrary, it is there stated that the ''territory is composed of subdivided property and is suitable and is used only for residence purposes.'' If on the hearing of the case and entering up judgment of incorporation, assuming that such conclusion is reached, the county court improperly includes more territory than is warranted, its action is not only not conclusive, but is void (State ex inf. Rosenberger v. Town of Bellflower, supra), and may be attacked in a proper proceeding. [State ex rel. v. McReynolds et al., 61 Mo. 203; State ex inf. Attorney-General v. Fleming, 147 Mo. 1, 44 S. W. 758; State ex rel. Attorney-General v. Fleming, 158 Mo. 558, 59 S. W. 118; State ex inf. v. Gooch, 175 Mo. App. 270, 157 S. W. 846.] These cases are ample authority for the proposition that all the matters herein set out and complained of are matters to be reached by *quo warranto*, not by prohibition.

It is within the jurisdiction of the county court to determine whether agricultural lands, beyond what is proper, are included within the corporate limits of the proposed city. That would involve a question of fact which that court has power to solve in the first instance, its conclusion on this, as well as to whether the requisite number of taxable inhabitants have petitioned for incorporation, being, if void, open to attack by *quo warranto*. Prohibition only lies when there is lack of jurisdiction, or acts in excess of jurisdiction. [State ex rel. v. McQuillin, 260 Mo. 164, 168 S. W. 924.]

Every one of the matters suggested by the learned counsel for the relators are matters to be first determined by the county court. It is true that in the peti-

tion for the writ, fraud is charged, but very vaguely, as about to be perpetrated. Even in a direct attack by *quo warranto,* "unless fraud and collusion on the part of (the county court) is charged and proven, or unless fraud has been so practiced upon it, in the matter of procuring the order," and the fraud be distinctly charged, the action of the county court in making the order of incorporation, is not open to attack. [State ex inf. Attorney-General v. Fleming, 158 Mo. 558, 1. c. 562, 59 S. W. 118.] We cannot, in proceedings for prohibition, assume that the county court will err in its judicial determination of these questions, nor can we assume, in this proceeding, that their judgment will be procured by fraud, nor that they will improperly proceed in the conduct of the case. They have a right to proceed, even a right to commit error, in those proceedings. Their determination when made, is a judicial act, a judgment. [Cases supra.] Nor can we interfere with the action of that court in its manner of verification of signatures to the petition for incorporation, nor assume that it will proceed in the very irregular way suggested. That is within the judicial discretion of the court.

In brief, the subject-matter of the incorporation of cities of the fourth class is within the jurisdiction of the county court, where, as here, a legal petition for incorporation is presented. The return of respondent is that they had set this case for hearing and were about to proceed in the hearing when halted by our alternative writ. We cannot presume that the county court will err in its mode of procedure or in the final determination of the case. We cannot even here assume that it will grant incorporation. Hence no case is here presented warranting our interference with its action by prohibition. In a case very much like the one at bar (State ex rel. Scott v. Lichte, supra), our Supreme Court held that prohibition would not lie. The decision in that case is controlling here.

It will be a matter of regret if the proceedings are of such a character as lead to further litigation and to unsettled conditions. That is inseparable from controversies, not alone in the courts, but between individuals, when in the course of any proceeding, a dispute arises. But that is in itself no legal ground, no reason in law, why a superintending court should interfere with the exercise of a jurisdiction lodged by the Constitution and the statutes in a subordinate tribunal. To halt threatened litigation is the office of the writ of injunction, not of prohibition.

The alternative writ of prohibition heretofore issued is quashed and a writ of prohibition denied. *Nortoni* and *Allen, JJ.,* concur.